# SOUTHERN NEVADA PLUMBING & HEATING CORP., A Nevada Corporation, Appellant, *v.* MERVYN ADELSON AND IRWIN MOLASKY, Respondents.

No. 4528

May 13, 1963　　　　　　　　　　　381 P.2d 232

*Hawkins, Cannon & Hawkins,* of Las Vegas, for Appellant.

*George Rudiak,* of Las Vegas, for Respondent.

**OPINION**

By the Court, BADT, C. J.:

This is an appeal by Southern Nevada Plumbing & Heating Corporation from a judgment rendered in favor of Paradise Development Corporation, assignor of the respondents, in a lien foreclosure suit by Southern Nevada. Appellant, a plumbing contractor, entered into a contract to do the plumbing work contemplated by plans and specifications upon Sunrise Hospital in Clark County, Nevada. A supplementary contract was subsequently entered into for the furnishing of oxygen and vacuum piping, and later a further contract for the installation of air conditioning. Upon the completion of the construction, appellant presented bills for sundry items as extras on the first two contracts, and as the total labor and material supplied by reason of the third contract, it being asserted that on the third contract no plans or specifications were ever submitted to appellant, and that it was therefore necessary to bill such jobs as labor and materials for all work done on such item upon a quantum meruit. The aggregate of such items amounted to $40,609.62.

Payment having been refused, appellant filed its lien claim and suit to foreclose the same. Respondents

counterclaimed, claiming an overpayment of $826.14, in addition to the sum of $14,609.70 paid to clear their property from a lien for which appellant was responsible.

The trial occupied 23 days and the record of the testimony is contained in six typewritten volumes, embracing 4,332 folios. The trial court made its findings, from which it concluded that appellant was indebted to respondents in the sum of $12,239.78 plus interest and costs. From the judgment and order denying new trial, this appeal was taken. Appellant specifies as errors of law the following: (a) that the trial court erred in rejecting in toto sundry items claimed as extras; (b) that the trial court erred in allowing sundry items of extras in sums less than the amounts claimed when the only evidence introduced supported the amounts claimed; (c) that it erred in admitting the testimony of three expert witnesses as to value; (d) that it erred in applying as overhead and profit the figure of 15 percent against evidence requiring an allowance of 20 percent; (e) that the trial court erred in finding that the contract for the air conditioning was a valid and binding contract; and (f) that the court erred in disapproving the time and material billing of items held by the court to be valid extras.

Treatment in the appellant's opening brief of the sundry items above referred to is by listing, first, all the claimed extras that were disallowed as such, and secondly, such items as were allowed in part only. In all, these comprise some 49 items, each one of which is considered separately so that we have in effect that many separate lawsuits.

This, then, is another case in which the appellant comes before this court and says: "We fully recognize the rule under which this court will not undertake to disturb the trial court's finding when supported by substantial evidence or where the evidence is in substantial conflict, but * * *." In the present instance this in effect is said 49 times. We have examined what the briefs have to say in discussion of each item

involved. As to doubtful items, we have had recourse to the record and to our court reporter's transcript of parts of the oral argument. To discuss each of the items in dispute would be far beyond the call of duty, conscientious as this court tries to be. The result is that as to each item in dispute, we are unable to conclude that the court's finding lacks substantial support. Some of the items however require special attention, and will be noted later.

The trial court's written opinion, on which the findings were based, indicates the meticulous attention given to every item. The learned trial judge first noted that "as to each of the items, or nearly every one of them, there was testimony given" by some six witnesses, some for appellant and some for respondents "so that the reasoning of the court is based in each of these items upon what the court considers to be the most worthy testimony relating to each of the items." Item by item the court indicates either: "Held to be not an extra," or that of the specific amount claimed, a specific reduced sum is allowed.

As to the air conditioning contract, appellant contended that there was no express contract because the "alleged contract" was too indefinite to be enforced, as no plans had been submitted to it. Because of this assertion, appellant sought payment on a quantum meruit basis in the amount of $28,777.57. Under the written contract appellant agreed to furnish and install all necessary chilled and hot water piping, cooling tower condensing piping, valves and air vents, pipe fittings, etc., "as per plans and specifications as verbally outlined by Barney Klinger of Kissell Refrigeration Corporation. All equipment to be furnished by Kissell * * *. Total price $7,000.00." The court allowed $2,069.99 as legitimate variations and extras. The court held that appellant "entered into said contract with full knowledge of its contents and of the plans and specifications detailing the work to be performed and materials to be furnished * * *." Times, places, dates, and persons then present were investigated, indicating to the

trial court's satisfaction that appellant had knowledge of the plans before it made its bid. The labor portion of the air conditioning claim received its support entirely in the appellant's secretary's testimony concerning the time cards turned in. This testimony, under the circumstances developed in her cross-examination, was of extremely questionable value, the court referring to appellant's "sloppy business methods," and the labor costs and the material costs of the asserted extras were flatly contradicted by respondents' witnesses. The record furnishes ample support for the trial court's finding and conclusion.

Appellant's assignments of error as they pertain to the other contracts are equally without merit. Item by item the trial court sifted the evidence.

One disputed item concerned the sum of $5,560.05 for overtime, of which appellant charged $3,415.29 to respondents. The trial court found that as the hospital was urging the contractor to get the job done, it was agreed that each pay half of the overtime charges, and concluded that the sum of $2,780, under this agreement for this item, was properly chargeable one half to each. The trial court accordingly allowed $2,780 of the $3,415.29 charge for the overtime.

The court disallowed an item of $1,378.79 claimed for unloading, moving, and setting of equipment in the kitchen and snack bar. (The court allowed $75.20 for part of this work.) The contract provided, "The kitchen equipment is to be furnished by others, but shall be connected by SOUTHERN." Appellant contends that the requirement that the equipment be "connected" by it does not include setting it in place. Respondents' witnesses testified that according to the custom of the industry, where a specialty contractor has contracted to connect up kitchen equipment, it is his obligation to set it up. The court held that the work of setting up the equipment was within the scope of the contract.

The main part of appellant's claim for $2,102.10 relating to changes in plumbing to accommodate service sinks was rejected by the court, whose action was apparently based upon the testimony of respondents' foreman to

the effect that they had not been installed in accordance with the plans. Appellant contends, however, that the extra work was the result of a change order signed by respondent Adelson. Adelson testified, however, that he was there simply because the foreman was sick; that it was represented to him that this particular work was not in the contract. He said, "I don't know anything about the contract but this work has got to be done." When appellant's foreman insisted that in order to get the work done he had to have a change order signed, Adelson replied: "You make out the change order and I will sign it  *  *  *. I explained to him, as he was well aware, that I had no knowledge of the contract, all I knew was that the work had to be done at this point, that I would sign a change order. If there was any problem we would go over it later but the work had to be done at that point, so I signed the order. *  *  *  At the time I signed these I did not actually know whether they were proper extras or not." The court's conclusion that the extra work was the result of appellant's failure to follow the plans and that the change order was made with the reservation that it was subject to future examination and adjustment, finds substantial support in the evidence.

A similar situation applies to a claimed extra of $1,957.59 for material and labor for connecting sterilizers and for repairing sterilizers. Here again respondent Adelson had signed a change order under the circumstances above recited. And here again the testimony was in direct conflict.

Appellant's claim for $2,121.80 for partial installation of a sprinkling system was reduced by the court to the allowed sum of $1,450.65. The record shows ample substantiation of this action, particularly in the testimony of one Rubidoux, a partner in Nevada Lawn Irrigation Company who had begun and later completed the installation after appellant had done part of the work.

And so it goes on and on, with item after item.

Appellant asserts error in the trial court's application of a factor of 15 percent on overhead and profit, asserting that the only evidence on the point is the testimony of appellant's witnesses supporting a usual practice in Las Vegas of applying 10 percent for overhead, plus 10 percent for profit. The actual plumbing contract provided for payment of actual cost plus 15 percent of such cost, not to exceed $67,328.67. The work sheets attached contained the provision: "1. Should any extra work (that is, extra labor and extra materials in addition to the labor and materials herein set forth) be ordered, the plumbing contractor shall be paid for the same * * *. The amount to be paid for same to be agreed upon in advance or to be the overall cost price of said extra labor and materials plus ____% thereof." The witness Yanke, testifying for appellant, said in this regard: "Originally when I figured the job, this hospital job on my original take-off figure sheet, I figured it at 10 and 10 and Mr. Molasky [one of the respondents] saw it and he said that was too much money, he didn't want to pay that and then we agreed at a flat 15% as it shows in the contract." It would not be in order for this court to say that the trial court was compelled to construe the provision for payment of costs and materials, "plus ____%," in accordance with testimony that 20 percent was the usual custom and practice in the Las Vegas district without recourse to other contract provisions for cost plus 15 percent, particularly as this figure resulted from oral conference and agreement between the parties.

Appellant contends that the respondents' witnesses who testified to costs and values were not properly qualified as experts, and that all their testimony should have been rejected as incompetent. The determination of the competency of the expert witnesses was largely in the discretion of the trial judge. Lockart v. Maclean, 77 Nev. 210, 361 P.2d 670; Board of Regents of University,

Etc. v. Cannon, 86 Ariz. 176, 342 P.2d 207, 209; Webb v. Olin Mathieson Chemical Corporation, 9 Utah 2d 275, 342 P.2d 1094, 1097, 80 A.L.R.2d 476. We find no error in his rulings in this regard. In a few instances it is claimed that such testimony is based on hearsay, because the "construction expert" had gone over the job and pointed out the work done to the "valuation expert," who thereupon placed his valuation on the extras in question. The competency of both witnesses to testify having been accepted by the court, the hearsay rule was not violated.

The few items we have discussed are representative of them all. We are satisfied that as to each item there was a direct conflict in the evidence. The trial court resolved this conflict, in most instances in favor of respondents, but allowed a total of $8,880.37 for extras. "The duty of an appellate court to review the evidence has been performed when it has determined that there is substantial evidence to support the [findings]." Pinana v. State, 76 Nev. 274, 289, 352 P.2d 824.

In Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747, involving a construction contract for numerous improvements in the buildings on a ranch, the owner, like the respondents here, contended that the labor and material items had been grossly padded. There the trial court accepted almost in toto the testimony of the contractor and his witnesses in preference to the testimony of the owner's witnesses. Here the trial court accepted the testimony of the owner's witnesses and rejected that of the contractor's witnesses. There, as here, the court considered certain items claimed to be extras and likewise considered value of labor and improvements involved. The court said: "[Appellants] claim that the evidence indicates clearly gross and unwarranted padding of items of labor and material. Some of the items were disallowed by the trial court. We think the trial court gave careful consideration to the evidence relative to the items in question, and that the claims of the appellants were disallowed only in such instances as the evidence on the part of the respondents substantially justified and sustained a finding in their favor.

"The next proposition deals with extras which appellants claim the respondents were bound to supply under the terms of the contract. Certain claimed deductions were asked by appellants of the trial court; some were allowed and others disallowed. We think the court took the proper view of the law and the facts in making a determination of this claim."

Such, we think, is the case here. The judgment and the order denying new trial are affirmed with costs.

MCNAMEE and THOMPSON, JJ., concur.