LOIS ANN LEVINE AND STEVEN DAVID LEVINE, MINORS BY THEIR GUARDIAN AD LITEM, LAWRENCE MUSHKIN; AND LOIS ANN LEVINE AND STEVEN DAVID LEVINE, BY THEIR GUARDIAN AD LITEM, LAWRENCE MUSHKIN, AS THE HEIRS OF CHARLES LEVINE, DECEASED, APPELLANTS, v. HENRY C. REMOLIF, RESPONDENT.

No. 4652

March 30, 1964        390 P.2d 718

*Morton Galane,* of Las Vegas, for Appellants.

*Clarence Sundean* and *Carl J. Christensen,* of Las Vegas, for Respondent.

## OPINION

By the Court, McNAMEE, J.:

Charles Levine died as a result of a collision in Las Vegas between the Ford car he was driving and a Thunderbird car driven by respondent. This is a wrongful death action brought by the children of Charles Levine.

Respondent was proceeding south on Sixth Street toward the intersection of Sixth and Canosa. Deceased was approaching Sixth Street on Canosa from the west. Eastbound traffic on Canosa was regulated by a "YIELD" sign, which under NRS 484.164 required drivers approaching the sign to reduce speed or stop, if necessary, and yield the right of way to any vehicle in the intersection "or approaching on another highway so closely as to constitute an immediate hazard."[1]

Respondent testified he was traveling approximately 25 miles per hour on Sixth Street, and as he approached the intersection he slowed down to between 15 and 20 miles an hour, and at the moment of impact, "I was nearly stopped." He further testified that the Ford car entered the intersection "going within the vicinity of

---

[1]The parties hereto have assumed that both this state statute and the city ordinance pertaining to "YIELD" right-of-way signs are applicable. We do not intend so to hold. They have similar provisions and we have quoted from the state statute because it possibly is more favorable to the appellants.

40 miles an hour." The only other eye witness was James Marvin Melvin, who was 16½ years old at the time. He testified that the Ford went through the "YIELD" sign without stopping, at a speed he estimated to be 40 to 50 miles per hour. He did not see the Thunderbird until after the impact. The cars were traveling at right angles to each other. The front of the Thunderbird collided with the rear left side of the Ford. Twelve feet of skid marks showed that the Thunderbird had applied its brakes prior to the impact. There were no skid marks from the Ford prior to the impact. Various photographs and a diagram of the scene of the accident, prepared by two police officers, which showed the intersection, place of impact, skid marks, and where the two cars came to rest, were received in evidence. The accident happened at 8:00 P.M., on August 15, 1961. It was dusk and each car had its headlights on.

After appellants and respondent had presented their evidence, respondent moved to strike all of the testimony of Stephen E. Blewett on the ground that it was incompetent. The court concluded that witness Blewett "had no definite criteria upon which he could base a scientific conclusion as to the speed of either one of the vehicles, and his testimony, for that reason, is nothing more than a guess and is incompetent." The motion to strike Blewett's testimony was granted. Thereupon respondent moved the court for a directed verdict pursuant to NRCP 50(a) upon the ground that no evidence was introduced sufficient to sustain a verdict for the appellants based upon the negligence of respondent. This motion also was granted and the court entered a judgment for the respondent. Appeal is from the judgment and from the order denying a new trial.[2]

---

[2]Appellants' notice of appeal states that the appeal also is from certain rulings made prior to judgment. NRCP 72 does not provide for an appeal from such orders; they may be considered on an appeal from the judgment if the opening brief properly specifies such rulings as errors of law. The appeal was taken also from one special order after judgment, but that part of the appeal will not be considered because neither the briefs filed on appeal nor the oral arguments in this court have raised the issue presented thereby.

Several errors are assigned but only two require consideration.

Did the court err in striking the testimony of witness Blewett?

Blewett's testimony was material to the speed of the two vehicles. With respect to the speed of the Thunderbird, his testimony was based entirely upon those exhibits in evidence, to wit, the photographs of the scene of the accident and of the vehicles after they had come to rest, and the diagram made by two police officers, which gave their version of the movements of the two vehicles prior to and after impact. With respect to the speed of the Ford, his testimony was based on said photographs and diagram, and also upon certain tests he made with a Ford car at the scene of the accident several months after the accident. At no time did he consider the coefficient of friction.

While the photographs might have accurately depicted the outward appearance of the vehicles immediately after the accident they did not disclose the damage to the frames of the vehicles which could only be revealed from an examination of the cars themselves. Blewett had never seen either of the vehicles. The diagram upon which Blewett based a material part of his testimony was drawn by a police officer (some information thereon having been furnished to him by another police officer) who, according to the proof of appellants' own counsel, was inexperienced and untrained in reconstructing automobile accidents. Said diagram was partly a result of the conclusions and interpretations of the police officer as to the distances and the paths of the vehicles after impact. Furthermore the diagram was not drawn to scale. The lower court properly concluded that the testimony of Blewett, that he was able to determine from such a foundation with any degree of accuracy the speed of either vehicle immediately prior to impact, was incredible.

In Twidwell v. Davidson, 54 Wash.2d 75, 338 P.2d 326, the court held that it was error to permit an expert to usurp the function of the jury based solely upon an

examination of the photographs and of a diagram drawn by one party showing the approximate positions of the two vehicles at the time of and after the impact. "If this practice is to be permitted, the trial of automobile negligence cases will be a contest between expert witnesses who, upon examining the exhibits and hearing the testimony,[3] will advise the jury which party should recover."

In Lee v. Baker, 77 Nev. 462, 366 P.2d 513, we held that it was error to receive in evidence an exhibit made by a person who did not witness the accident, containing the conclusions of the maker as to the route of the two cars prior to impact, the point of impact, and the course taken by the cars after impact, supplemented in part by unintelligible and estimated distances when the maker thereof was not called as a witness subject to cross-examination. In the present case, the maker of the diagram was examined and cross-examined, and the diagram was received in evidence without objection; however, as stated before, the witness was inexperienced and untrained in reconstructing automobile accidents, and his conclusions to a substantial degree were a result of guesswork.

In granting the motion to strike Blewett's testimony the trial court properly decided that Blewett had no criteria upon which he could reach a conclusion as to the speed of either vehicle. His conclusions in this respect based not on facts but on his assumptions from the photographs which did not fully disclose the total damage to the cars, and from a diagram which to a substantial degree was the result of the conclusions of the maker, were mere speculation, conjecture, and guess. Proof of negligence cannot be left to mere speculation or conjecture. Johnson v. Brown, 77 Nev. 61, 359 P.2d 80.

The determination of the competency of an expert witness is largely in the discretion of the trial judge. So. Nevada Plumbing v. Adelson, 79 Nev. 233, 381 P.2d 232.

[3]Blewett heard no testimony in the present case.

Appellants recognize this rule, but feel that in striking Blewett's testimony the court abused its discretion. We find no abuse.

With the testimony of Blewett stricken, the record is devoid of any evidence which would justify a verdict for the appellants. The only evidence remaining, which appellants could rely upon as indicating negligence on the part of the respondent, would be the brushmarks shown in the photographs made on the pavement after the impact and also the diagram. In our opinion, these in themselves do not indicate that respondent was negligent and an inference therefrom that respondent was speeding would be merely a supposition or conjecture. In fact, Jacob Jurmain, a highly qualified expert who was not subjected to cross-examination and whose testimony was not contradicted, stated that from such facts alone and without considering the coefficient of friction it was not possible to estimate the speed of either car prior to impact.

Appellants' evidence indicates merely that an automobile accident occurred, that two cars were damaged, and that a person died as a result thereof. The only indications of speed or of negligence on the part of the respondent are the suppositive arguments of appellants' counsel which do not present a fact question for the jury. Cf. Bolt v. Davis, 70 N.M. 449, 374 P.2d 648. No fact question of negligence on the part of the respondent having been presented which would require its submission to the jury, we conclude that the judgment for the respondent was proper. NRCP 50(a).

The motion for new trial was based on the alleged errors committed by the lower court. Since we have determined that the lower court did not err, the denial of the motion for a new trial was proper.

Affirmed.

BADT, C. J., and THOMPSON, J., concur.