DENNIS LEE MINER, APPELLANT, v. RALPH LAMB, SHERIFF, CLARK COUNTY, NEVADA, RESPONDENT.

No. 5992

January 26, 1970                    464 P.2d 451

*James D. Santini,* Public Defender, and *Robert N. Peccole,* Deputy Public Defender, Clark County, for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *Addeliar D. Guy,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a denial of a pre-trial application for habeas corpus testing probable cause at a preliminary hearing. We affirm the denial.

In July, 1968, appellant and Paula Nichols, unmarried persons, were living together in an apartment in Las Vegas. About 11:30 p.m., July 8, John Zapantis, long-time friend of appellant, called at the apartment. One-half hour later appellant left for work. Around 1:30 a.m., July 9, Zapantis and Paula departed for the home of a friend. About 4:00 a.m., July 9, they returned to the apartment occupied by appellant and Paula, where they were met in front by appellant. Appellant and Paula engaged in a conversation not overheard by Zapantis and she then entered the apartment. Appellant then walked over to Zapantis and said, "This is out of line, you know, John." To which Zapantis replied, "Well, maybe it is but there is no reason for you to think anything wrong." Appellant then said, "Maybe you are right." Nothing further was said, and Zapantis left. Zapantis stated appellant did not seem to be upset, but that it was unlike him to say even that much since similar occurrences had taken place before without comment from appellant. Zapantis testified there were no marks or bruises on Paula when he brought her back to the apartment.

During the early evening hours of July 9, police were called to the apartment by appellant's mother, where they found Paula dead on the floor.

Appellant told the police that shortly after Paula returned home at 4:00 a.m., she appeared groggy and later comatose. Appellant found her breathing had almost stopped and he attempted to revive her by shaking her and slapping her face. That approach being unsuccessful, appellant then tried mouth-to-mouth resuscitation, also without success. He then dragged her off a couch, across the living room and into the bathroom where he placed her in the bathtub. There he again slapped her face and turned on the cold water in an attempt to revive her. This process continued until about 7:00 a.m. when she appeared to be breathing normally. Appellant then placed her on a sofa and he went to sleep on a nearby couch. Upon awaking about 8:00 p.m., appellant found Paula on the floor next to the sofa. She appeared to be dead. He called his mother, who upon arrival at the apartment confirmed the apparent death of Paula and called the police. Appellant was arrested and charged with Paula's murder.

During the preliminary hearing on an open murder charge, Dr. James Clarke, a pathologist who had performed the autopsy, was called by the State as a witness. He testified that

in his opinion Paula died from a cerebral concussion and subdural and subarachnoid hemorrhage due to multiple blunt traumatic injuries to the head and face caused by multiple blows to the head with some heavy object, such as a fist. He was of the further opinion that these blows were "homicidal" in nature. He also testified there were 12 or 14 bruises on Paula's head and face, although he did not count them nor examine them in detail. He also removed samples of blood, urine, tissue, stomach content and other substances from the body for testing. He was only partially aware of the results of the toxicological testing when he gave his testimony, but refused to change his opinion as to the cause of death when informed of the actual results of those tests. Appellant stipulated to the qualifications of Dr. Clarke as an expert witness.

Appellant called Dr. Thorne Butler, a pathologist and toxicologist, as his witness. Dr. Butler had conducted various tests on the specimens removed from Paula's body and testified that in his opinion her body contained sufficient quantities of alcohol and barbiturates to cause her death. He had not examined her body. Dr. Butler also criticized the method used by Dr. Clarke to determine the time of death, his failure to determine the character of the bruises found on Paula's face and head, and his description of the blows he claimed were the cause of death as being "homicidal." That term, Dr. Butler said, was inappropriate for a forensic pathologist. Dr. Butler specifically testified that in his opinion the cause of death was "most likely the cause of death is due to the synergistic effect of barbiturates and alcohol and that the trauma to the head, however caused, was a secondary and contributory—secondary and possibly contributory cause but not a primary cause in itself."

The magistrate held that the evidence adduced by the State established the corpus delicti of the open murder charge and that there was probable cause to believe appellant committed the crime.

Appellant contends that the testimony of Dr. Clarke was not legally sufficient to support the order because it was based to a substantial degree upon guesswork, whereas an expert witness's opinion must be based on all the facts and that such facts must support reasonably certain deductions, as distinguished from mere conjecture. He cites Beasley v. State, 81 Nev. 431, 404 P.2d 911 (1965), and Levine v. Remolif, 80 Nev. 168, 390 P.2d 718 (1964). He also contends the evidence does not establish all of the elements of an open murder charge.

1.   In Azbill v. State, 84 Nev. 345, 350, 440 P.2d 1014 (1968), this court held:

"If a death is thought to be caused by criminal means and a person is charged with a crime for causing that death, before he can be held for trial two things must be proved by sufficient legal evidence before a grand jury if an indictment is sought or before a magistrate if a complaint is filed and a preliminary hearing is held. They are (1) the fact that a crime has been committed; and (2) probable cause to believe that the person charged committed it.

"In proving the crime, which is otherwise known as the corpus delicti two elements must be established (1) the fact of death; and (2) the criminal agency of another responsible for that death. Beasley v. Lamb, 79 Nev. 78, 80, 378 P.2d 524 (1963)."

In our opinion, the testimony of Dr. Clarke at the preliminary examination established an inference of a criminal agency causing Paula's death. He had before him sufficient facts to justify his opinion, thus neither Beasley v. State, supra, nor Levine v. Remolif, supra, controls. This was sufficient proof of the hypothesis of death by criminal means. Azbill v. State, supra, at 352. It is true there was a noncriminal inference as to the cause of her death according to the testimony of Dr. Butler, which was equally plausible. The testimony of both Dr. Clarke and Dr. Butler was competent and thus admissible upon the criminal agency issue. The real question is the weight to be accorded the testimony of these witnesses. So long as an inference of criminal agency could be drawn, it was proper for the magistrate to draw it and leave to the jury at trial the determination of which expert witness was more credible.

2.   While it is a close question on the record before the lower court and this court, we are of the opinion that evidence presented by the State before this magistrate did establish all the elements of an open murder charge.

An open murder complaint charges murder in the first degree and all necessarily included offenses. NRS 175.501; Parsons v. State, 74 Nev. 302, 329 P.2d 1070 (1958); State v. Oschoa, 49 Nev. 194, 242 P. 582 (1926).

At a preliminary hearing on such charge, the degree of proof required to hold a person to answer in the district court is only

that it appears to the magistrate, from legal, competent evidence, that an offense has been committed and that the defendant committed it. Goldsmith v. Sheriff, 85 Nev. 295, 454 P.2d 86 (1969).

From the testimony of Zapantis, it is permissible to infer that appellant may have been sufficiently angry with Paula for going out with him for appellant to kill her even though he concealed or displayed no anger toward him.

In Azbill v. State, supra, at 351, we held:

"Once the corpus delicti is determined to have been proved by lawful evidence, confessions and admissions may clearly be considered in establishing probable cause to show that it was the particular defendant charged who was the criminal agency causing the death. In re Kelly, supra." [28 Nev. 491, 83 P. 223 (1905)].

From testimony of appellant given to the police, it is permissible to infer that no one was present in the apartment but he and Paula and that if she were beaten about the face and head to the extent of causing her death, as testified to by Dr. Clarke, appellant was the only one who could have administered the blows. Cf. Morton v. State, 82 Nev. 223, 224, 414 P.2d 952 (1966).

The order of the lower court denying the writ is affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.