THOMAS WILLIAM WRENN, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 6788

February 22, 1973            506 P.2d 418

*Douglas J. Shoemaker,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, *Herbert F. Ahlswede,* Chief
Deputy Attorney General, *Robert A. Groves,* Deputy Attorney
General, and *Roy A. Woofter,* District Attorney, Clark
County, for Respondent.

# OPINION

By the Court, THOMPSON, C. J.:

This appeal concerns discretionary rulings regarding expert opinion testimony offered by the defendant-appellant Wrenn and rejected by the trial court. It is Wrenn's contention that the proffered opinion testimony was vital to his defense and that its rejection was prejudicial error. He does not otherwise challenge the verdict, and it is clear to us that the verdict rests upon substantial evidence.

Thomas Wrenn was prosecuted for the murder of Hubert Arthur Smith. He and Smith were not acquainted. They apparently had become angry with each other while each was driving his car in the same direction along certain streets in Las Vegas. Their anger was expressed by obscene gestures, profane language, and efforts to impede each other's vehicular travel. They finally stopped in front of the home of Mr. and Mrs. G. C. Baugus. Randy Baugus was a passenger in Thomas Wrenn's car. They were close friends. Randy was on medical leave from the Marine Corps. His legs had been amputated below the knees as a consequence of stepping in a booby trap during military service in Viet Nam.

Hubert Smith got out of his car and advanced menancingly towards Wrenn and Baugus. Wrenn exited from his car, entered the Baugus home, obtained a high-powered Remington magnum rifle, filled it with ammunition and, upon leaving the house, fired two shots in the air. Hubert Smith promptly returned to his Volkswagen and started to drive away. A third shot was fired which passed through the left rear window of the moving Volkswagen and into the left mid-back of Smith, causing a massive hemorrhage and immediate death. Meanwhile, Randy Baugus had removed himself from the Wrenn car and was sitting on the ground nearby.

According to Wrenn, the third shot was accidentally discharged while he was bending over to lift Randy from the ground. He stated: "and I bent over to pick him up, Randy grabbed the gun, it discharged accidentally." His version of the incident was contradicted by an eyewitness who testified that the rifle was on Wrenn's shoulder when he fired the third shot.

Almost two years after the homicide, two engineers made

out-of-court engineering calculations at the scene. The purpose was to determine the elevation of the rifle when the fatal bullet was discharged. One of them was allowed to testify and his testimony was later stricken. The other was precluded from expressing his opinion, and defense counsel then made an offer of proof. The stricken testimony and the offer of proof are almost identical and place the elevation of the rifle at waist level. This opinion evidence would tend to corroborate the testimony given by the defendant.

The conditions of the out-of-court experiment should be substantially similar to those prevailing at the time of the incident in issue before opinion testimony based thereon is admissible. Jorgensen v. People, 482 P.2d 962 (Colo. 1971). Of course, an exact duplication of the conditions is not required. L. A. & S. L. R. Co. v. Umbaugh, 61 Nev. 214, 224, 123 P.2d 224 (1942). Whether substantial similarity exists normally is a discretionary decision for the trial judge to make. Levine v. Remolif, 80 Nev. 168, 172, 390 P.2d 718 (1964). Correlatively, such opinion testimony should not be received if shown to rest upon assumptions rather than facts. Levine v. Remolif, supra; Choat v. McDorman, 86 Nev. 332, 335, 468 P.2d 354 (1970). And, such expert opinion may not be the result of guesswork or conjecture. Beasley v. State, 81 Nev. 431, 436, 404 P.2d 911 (1965).

In the instant matter, all concede that the validity of the engineering calculations of the expert witnesses rested upon several assumed facts which were not established to have been the actual facts of the homicide.[1] Moreover, the experts admitted that a slight difference in the data used by them would materially affect their conclusions as to the level at which the rifle was discharged. Since the probative value of their engineering calculations and resulting conclusions necessarily depended upon the accuracy of the facts they had assumed to be true, the trial judge properly precluded their

---

[1] The calculations of the experts assumed: (a) that the Volkswagen which Hubert Smith was driving when shot was stationary when, in fact, it was moving (b) the position of the Volkswagen in the street when its left rear window was pierced by the bullet, when that position was not definitely established (c) the posture of Smith in the car while driving it, when that posture was not known (d) the location of the defendant when the rifle was discharged, when that location was not fixed with certainty (e) the grading of the street and (f) several other assumptions.

opinion testimony. Levine v. Remolif, supra; Choat v. McDorman, supra; Beasley v. State, supra. The evidence code, and particularly NRS 50.275; 50.285; 50.295 and 50.305, does not suggest that the trial judge should have ruled otherwise.[2]
Affirmed.

MOWBRAY, GUNDERSON, BATJER, and ZENOFF, JJ., concur.

[2]NRS 50.275: If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge.

NRS 50.285: 1. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing.

2. If of a type reasonably relied upon by experts in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

NRS 50.295: Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

NRS 50.305: The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.