593 S.E.2d 603

**Joseph WILSON, Respondent,**

v.

**Charles RIVERS, Petitioner.**

No. 25788.

Supreme Court of South Carolina.

Heard Nov. 18, 2003.

Decided March 1, 2004.

448

---

John L. McDonald, Jr., of Clawson & Staubes, LLC, of Charleston, for petitioner.

Francis X. McCann, of Charleston, for respondent.

Justice MOORE:

We granted certiorari to review the Court of Appeals' decision [1] affirming the trial court's exclusion of petitioner's expert on biomechanics. We reverse.

## ISSUE

Did the Court of Appeals err by affirming the trial court's exclusion of the videotaped deposition of petitioner's biomechanics expert?

## FACTS

Respondent was a passenger in a car stopped at a red light. A car driven by petitioner struck respondent's car from behind. At the time of impact, respondent, who was sitting in the front passenger seat, was wearing his seat belt and was leaning forward to retrieve his keys from the floorboard.

Respondent initially did not seek medical treatment because he did not believe he was injured. Subsequently, he began experiencing pain and soreness in his lower back. He maintained he did not have a prior medical history of back injuries or problems. Respondent was treated for several months by his general practitioner before it was discovered he had a herniated disc. He was then treated by Dr. Stephen Rawe, a neurosurgeon, and by Dr. Jeffrey Wingate, an orthopedist who specializes in reconstructive surgery of the spine. When their initial treatment failed, surgery was performed to remove the disc and a metal cage was inserted in its place.

Both Dr. Rawe and Dr. Wingate testified it was their opinion the ruptured disc resulted from the collision. Both stated respondent's position during the collision made him more vulnerable to injury. Dr. Rawe testified, however, that it was his opinion respondent suffered from degenerative disc disease prior to the accident.

Petitioner's expert, Dr. Barry F. Jeffries, a radiologist, testified respondent's herniated disc was not caused by the accident. Dr. Jeffries opined the herniation was a result of degenerative disc disease that predated the accident and that

---

1. *Wilson v. Rivers*, 350 S.C. 536, 567 S.E.2d 482 (Ct.App.2002).

the herniation could have been caused by "occupational or lifestyle habits."

Petitioner sought to introduce the videotaped deposition of Dr. Richard Harding as an expert in the field of biomechanics.[2] Respondent objected and Dr. Harding's testimony was proffered.

After Dr. Harding received his medical degree from the University of London, he worked as a family practice physician in the British Royal Air Force. While in the Air Force, he obtained his Ph.D. in human physiology and was appointed as a consultant in aerospace medicine. Since 1995, he has been working as a consultant at Biodynamics Research Corporation (BRC). BRC provides consulting services in the field of biomechanics and, specifically, in the study of vehicle impacts.

Dr. Harding further testified he is a qualified biomechanic because he has a strong background in aerospace medicine, which is founded in biomechanics, and because he has a background in physiology. Dr. Harding testified he had expertise in the application of physics to an understanding of the human response to impacts or events.

Dr. Harding testified he co-authored a published paper entitled "The Biomechanics of Whiplash," and a chapter, which at the time of the deposition was not published, on the same subject. He stated he has attended two traffic accident reconstruction conferences. He further stated he has conducted over 800 impact and injury causation analyses, and has been qualified as an expert in the field of biomechanics in other states.

In the instant case, Dr. Harding reviewed the depositions of respondent's physicians, Dr. Jeffries, and respondent. He also reviewed the pleadings and answers to interrogatories, photographs of the vehicles, the accident report, and the repair cost estimates of both vehicles. He also reviewed respondent's medical records.

---

2. Biomechanics is the application of mechanics to the interaction of biological systems with their external environment. When investigating an accident, biomechanical analysis can be used to reconstruct a victim's motion and relate it to his injuries.

A review of the materials, combined with his knowledge of independent testing by Consumer Reports and the Insurance Institute for Highway Safety on the types of vehicles involved, led Dr. Harding to conclude the delta V[3] on the vehicle in which respondent was a passenger, was no greater than five miles per hour and the impact came from directly behind. Dr. Harding stated the force was not of sufficient magnitude or direction to cause respondent's herniated disc.

To determine what happened during the accident, Dr. Harding stated he relied upon the impact analysis, which gave him a magnitude of the impact and the direction, and he also relied upon respondent's description of how he was positioned during the impact. Dr. Harding stated the fact respondent was leaned over would increase his risk of musculoskeletal injury in his neck and his risk of developing a muscle strain from top to bottom in his back, but would not increase his risk of having a herniated disc. To have a herniated disc, he stated, there has to be a combination of top-to-bottom loading associated with some rotation at the same time. Dr. Harding concluded the forces as they occurred in the accident were not appropriate to produce a herniated disc. He believed other activities which respondent engaged in after the accident could have caused his injury, such as sneezing, moving a cabinet, or working on his vehicle.

The trial court concluded Dr. Harding was qualified regarding medical matters, but not regarding biomechanics. The court excluded the testimony pursuant to Rule 403, SCRE, because the testimony would be confusing to the jury. A majority of the Court of Appeals found there was evidence to support the trial court's decision.

Judge Shuler, in a well-reasoned dissent, found there was no evidence to support the trial court's ruling that Dr. Harding's proposed testimony would be confusing to the jury.

---

3. Dr. Harding described the delta V, or the impact-related change in velocity, as the difference between a vehicle's velocity before an accident and its velocity as a consequence of the accident. He stated the higher the delta V, the more likely an injury will occur because the change in velocity occurs over a very short period of time and imposes accelerations and therefore force on the individuals in the vehicle. He compared respondent's vehicle's delta V of 5 to being hit by a bumper car at an amusement park.

Judge Shuler found the exclusion of Dr. Harding's testimony prejudiced petitioner, who offered it to support his defense that the low-speed, low-impact accident could not have caused respondent's back injury, the major dispute at trial.

## DISCUSSION

■ Petitioner argues the Court of Appeals erred by affirming the trial court's decision to exclude Dr. Harding's expert testimony.

■ The test for qualification of an expert is a relative one that is dependent on the particular witness's reference to the subject. *Lee v. Suess,* 318 S.C. 283, 457 S.E.2d 344 (1995) (finding trial court erred by finding plastic reconstructive surgeon unqualified to give expert opinion in field of family practice because limited exposure of surgeon to field of family practice merely goes to weight of testimony and not its admissibility).

Rule 702, SCRE, provides that a witness qualified as an expert may testify when scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. However, even if an expert's testimony is admissible under the rules, the trial court may exclude the testimony if its probative value is outweighed by the danger of, among other things, unfair prejudice, confusion of the issues, or misleading the jury. Rule 403, SCRE.

The trial court abused its discretion by not qualifying Dr. Harding as an expert in biomechanics. *See Mizell v. Glover,* 351 S.C. 392, 570 S.E.2d 176 (2002) (trial court's ruling to exclude or admit expert testimony will not be disturbed on appeal absent clear abuse of discretion). Dr. Harding's specialized knowledge would assist the jury to determine the facts in issue. Further, he was better qualified than the jury to evaluate the force of a moving vehicle on the human body. *See id.* (for court to find witness competent to testify as expert, witness must be better qualified than jury to form opinion on particular subject of testimony).

Although Dr. Harding did not have a degree in biomechanics, he was a medical doctor with a doctorate in human

physiology and training in biomechanics and he had been qualified as an expert in the field of biomechanics in other states. Any defects in the amount of his education and experience, if any, go to the weight of his testimony and not its admissibility. *See Lee v. Suess, supra* (generally, defects in amount and quality of education and experience go to weight of expert's testimony and not its admissibility). Dr. Harding was qualified to render an opinion on the forces created by an impact and on the general effects on the human body caused by such forces and, because Dr. Harding is a medical doctor, an opinion regarding the cause of respondent's particular medical problems. *See, e.g., Smelser v. Norfolk Southern Ry. Co.,* 105 F.3d 299 (6th Cir.1997)[4] (biomechanics expert qualified to render opinion on forces generated in rear-end collision and to speak generally about types of injuries forces would generate, but because not medical doctor, testimony about plaintiff's specific injuries were beyond expertise); *Dorsett v. American Isuzu Motors, Inc.,* 805 F.Supp. 1212 (E.D.Pa.1992) (expert qualified to opine plaintiff injured when head came in contact with vehicle roof during rollover accident where expert testified work in Navy related to biomechanics, specifically to cause of skull fractures, and where lectured on biomechanics of vehicle impact); *Maele v. Arrington,* 111 Wash.App. 557, 45 P.3d 557 (2002) (biomechanical engineer, who taught at medical school and conducted federally funded research on low-speed collisions, properly testified as expert witness that maximum force that could have impacted plaintiff's body does not cause injuries).

Further, the court erred by finding Dr. Harding's testimony should be excluded under Rule 403 because it would be confusing to the jury. Contrary to the findings of the Court of Appeals, Dr. Harding did not solely rely on the damage to the car in reaching his conclusion. Dr. Harding considered depositions, medical records, photographs, impact tests, and the accident report in reaching his conclusion. Additionally, Dr. Harding's conclusion was based on his reliance upon respondent's description of how he was positioned during the impact, *i.e.* leaning over to retrieve his keys from the floorboard. Dr. Harding discussed in detail what injuries would occur as a result of this position. Further, Dr. Harding

4. *Cert. denied,* 522 U.S. 817, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997).

fully explained the method he used to reach his conclusion and did not contradict himself. Accordingly, the Court of Appeals erred by affirming the trial court's decision to exclude Dr. Harding's testimony because it was confusing.

Furthermore, the probative value of Dr. Harding's testimony outweighs any prejudicial effect to respondent. Dr. Harding would have testified the low-impact collision, as it occurred, could not have caused respondent's back injury. Whether respondent's injury occurred due to a pre-existing degenerative disc disease or due to the accident was the major issue at trial. Therefore, we reverse the opinion of the Court of Appeals.[5]

**REVERSED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

5. Although Dr. Harding is an expert in biomechanics, the trial court has not addressed the question whether the underlying science of biomechanics is reliable to determine what injuries could have been caused by this particular accident. *See State v. Council,* 335 S.C. 1, 515 S.E.2d 508, *cert. denied* 528 U.S. 1050, 120 S.Ct. 588, 145 L.Ed.2d 489 (1999) (to determine whether underlying science of expert's testimony is reliable, court will look at several factors, including: (1) publications and peer review of technique; (2) prior application of method to type of evidence involved in case; (3) quality control procedures used to ensure reliability; and (4) consistency of method with recognized scientific laws and procedures).