754 S.E.2d 267

Mark F. TESENIAR and Nan M. Teseniar, on behalf of themselves and others similarly situated, and Twelve Oaks at Fenwick Property Owners Association, Inc., Respondents,

v.

PROFESSIONAL PLASTERING & STUCCO, INC., Maria Arias, and Miquel Rosales, Defendants,

Of whom Professional Plastering & Stucco, Inc. is the Appellant.

Professional Plastering & Stucco, Inc., Appellant,

v.

Maria Arias, Miquel Rosales, and APS Enterprises Unlimited, Inc., Third–Party Plaintiffs,

Of whom APS Unlimited, Inc. is the Respondent.

Appellate Case No. 2011–196386.

No. 5188.

Court of Appeals of South Carolina.

Heard Oct. 17, 2013.
Decided Jan. 8, 2014.
Rehearing Denied Feb. 20, 2014.

84

Jonathan J. Anderson and Danielle Beck Wegener, both of Anderson Reynolds & Stephens, LLC, of Charleston; Everett Augustus Kendall, II, and Christy Elizabeth Mahon, both of Sweeny Wingate & Barrow, PA, of Columbia; for Appellant Professional Plastering & Stucco.

W. Jefferson Leath, Jr., of Leath Bouch & Seekings, LLP, of Charleston; Phillip Ward Segui, Jr., of Segui Law Firm, of Mt. Pleasant; John T. Chakeris, of Chakeris Law Firm, of Charleston; Jesse A. Kirchner and Michael A. Timbes, both of Thurmond Kirchner Timbes & Yelverton, PA, of Charleston; Justin O'Toole Lucey, of Mt. Pleasant; all for Respondents Mark F. and Nan M. Teseniar & Twelve Oaks at Fenwick.

Roy Pearce Maybank, Amanda R. Maybank, and Jason Alan Daigle, all of Maybank Law Firm, LLC, of Charleston, for Respondent APS Enterprises.

LOCKEMY, J.

In this civil appeal arising out of the defective construction of an apartment complex, Professional Plastering & Stucco, Inc. (Professional) appeals the jury's verdict in favor of Mark F. Teseniar and Nan M. Teseniar, on behalf of themselves and other similarly situated, and Twelve Oaks at Fenwick Property Owners Association, Inc. (POA) (collectively referred to as Respondents) on the claims of negligence and breach of warranty of workmanlike service. Professional asserts the trial court committed reversible error by (1) failing to qualify Chris Dawkins as an expert witness, (2) failing to admit Professional's stucco-only estimate, (3) denying Professional's motion for set-off and motion for a new trial nisi remittitur, (4) including the settlement amount received by Respondents on the verdict form and in its jury charge, (5) giving improper jury instructions, and (6) denying Professional's motion for a directed verdict and judgment notwithstanding the verdict (JNOV) on the claim of breach of warranty of workmanlike service.

Professional also appeals the trial court's grant of summary judgment in its cross-claim against APS Unlimited, Inc. (APS). We reverse.

## FACTS

Respondents represent the interests of the POA, and, in a representative capacity, the individual homeowners of the units at Twelve Oaks at Fenwick Plantation (Fenwick) on John's Island, South Carolina. Fenwick was originally an apartment complex, but the units were converted to condominiums in 2006. Fenwick contained 216 units within twelve buildings. After discovering various problems in the buildings, Respondents retained Miles Glick, a practicing architect, to investigate the source of the problems. Glick determined there were numerous deficiencies in the overall construction attributable to various contractors and sub-contractors.

The Teseniars filed a civil action alleging design and construction defects resulting in water intrusion in the buildings at Fenwick. The POA filed a separate lawsuit, but the two suits were consolidated on October 10, 2008. While the lawsuit initially involved numerous defendants, all of the defendants, with the exception of Professional, settled with Respondents. Thus, the trial focused solely on the exterior stucco installed by Professional and the resulting damage.

Summit Contractors, Inc. (Summit) operated as the general contractor for Fenwick. Professional was hired as a subcontractor for the original construction project,[1] and it installed about one-quarter million square feet of stucco at Fenwick using a form of stucco called the Magna Wall system. The Magna Wall system is a proprietary stucco system that must be installed pursuant to the manufacturer's instructions. It is a water management system designed to control water that gathers behind the cladding by allowing it to escape before damage occurs, as opposed to a barrier system, which does not allow water behind the cladding. Professional was certified by the manufacturer to install the system.

At trial, Respondents presented Glick who was qualified as an expert in architecture, forensic architecture, and construc-

---

1. Professional ceased doing business the same year this lawsuit was filed.

tion. He testified to numerous deficiencies in Professional's work that constituted a violation of building codes, the installation instructions, and industry standards. Glick stated there was improper flashing and lapping, which allowed water to damage the underlying sheathing and studs in the wall. Further, Glick testified there were missing weep screeds, which should have been installed to allow water entering the system to drain from the wall to avoid causing damage.

Donnie King, sole owner of Professional at the time of Fenwick's construction, testified on behalf of the Respondents regarding Professional's stucco application. Respondents also presented Robert Gallagher, who was qualified as an expert in the fields of general contracting and estimating. Gallagher offered opinions about the associated costs of Glick's suggested repairs. Gallagher prepared a $15,748,225.00 estimate that he alleged would remedy 100% of the problems, including the stucco defects. However, because Professional was the sole remaining defendant at trial, Gallagher also prepared a "stucco-only" estimate, which he alleged would equal $8,761,443.00.

In response to the evidence and testimonies presented by Respondents, Professional offered the testimony, via deposition, of Claude McNabb and Tacy McGinty. McNabb was the vice president of the developer of Fenwick when it was constructed, and he stated Professional's stucco application was proper and passed his inspection. McGinty, the general contractor's project manager during Fenwick's construction, testified that Professional's work was properly done in accordance with the contract documents.

Professional presented Christian Dawkins and attempted to qualify him as an expert in construction and engineering, but Respondents objected to his qualification. In addition to contending Dawkins was not qualified to testify as an expert, Respondents also argued his testimony should be excluded based on a discovery violation. After voir dire and a subsequent overnight recess, the trial court ruled against qualifying Dawkins. Dawkins was only allowed to testify to his personal observations during his investigation of Fenwick, and he could not give any opinions.

Professional presented Robert Puschek as an expert in construction and restoration, and he was qualified without

objection. Puschek offered testimony regarding the cost to repair the damages at Fenwick. In response to Gallagher's stucco-only estimate, Puschek asserted it would only cost $3,662,587.64 to repair any stucco-related damage. Professional was allowed to display a document that reflected the price comparison between Gallagher's and Puschek's stucco-only cost estimates on an overhead projector. However, when Professional requested the document be admitted into evidence as Defendant's Exhibit 4, Respondents objected. The trial court sustained Respondents' objection.

The jury found in favor of Respondents on the two causes of action, negligence and breach of warranty of workmanlike service, awarding actual damages in the amount of $7,723,225.00. Following the return of the jury's verdict, Professional made motions for a new trial absolute, set-off, JNOV, and new trial nisi remittitur. Within ten days of the trial, Professional filed written motions, memoranda, and replies in support of its motions. Each motion was denied by the trial court in a Form 4 order filed on June 17, 2011. Professional subsequently filed a motion to alter or amend the judgment, which was also denied by the trial court on July 19, 2011.

During the ongoing lawsuit between Professional and Respondents, Professional filed a cross-claim on April 1, 2010, against its subcontractor, APS, asserting claims for negligence, breach of warranties, breach of contract, and indemnity. Professional had hired APS as a sub-contractor to perform stucco repairs in the breezeways of the buildings during Fenwick's conversion into condominiums. APS was also included as a defendant in Respondents' suit and settled for the amount of $100,000.

APS filed a motion for summary judgment on the basis that Professional was not a licensed stucco installer, and, therefore, Professional could not maintain these claims pursuant to statutory law. The trial court granted APS' motion on May 11, 2011. Professional subsequently filed a Rule 59(e), SCRCP motion to alter or amend the judgment, and the trial court denied it.

Professional now appeals the jury verdict, as well as the trial court's denial of its motions for a new trial, directed

verdict, JNOV, set-off, and to alter or amend the judgment in its suit with Respondents. Professional further appeals the order granting APS's motion for summary judgment and the subsequent denial of its Rule 59(e), SCRCP motion.

## LAW/ANALYSIS

### Qualification of Chris Dawkins

 Professional argues the trial court erred in failing to qualify Dawkins as an expert witness. We agree.

"The qualification of a witness as an expert is a matter largely within the trial court's discretion and will not be reversed absent an abuse of that discretion." *Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 555, 658 S.E.2d 80, 85 (2008) (citing *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997)). "An abuse of discretion occurs when the trial court's decision is based upon an error of law or upon factual findings that are without evidentiary support." *Id.* at 555, 658 S.E.2d at 85–86 (citing *Gooding*, 326 S.C. at 252, 487 S.E.2d at 598).

Pursuant to Rule 702, SCRE, a person may be qualified as an expert based upon "knowledge, skill, experience, training, or education." Rule 702, SCRE, does not set forth mandatory requirements for the qualification of an expert witness, acknowledging that "there are a variety of ways in which a person can become so skilled or knowledgeable in a field that their opinion in a scientific, technical, or specialized area can assist the trier of fact in determining a fact or in understanding the evidence." *Fields*, 376 S.C. at 556, 658 S.E.2d at 86.

> Because a specific licensing requirement is potentially inconsistent with the variety of ways a person may gain specialized knowledge, [our supreme court has recognized] that a trial court's decision to refuse to qualify a person as an expert based solely on the failure to meet a licensing requirement arguably impairs the truth-seeking function of courts.

*Id.; see J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 374–75 635 S.E.2d 97, 104 (2006).

 "At the same time, however, [the appellate court's] jurisprudence emphasizes the role of the trial court as the gatekeeper in determining both the qualifications of an expert

and whether the expert's testimony will assist the trier of fact." *Fields,* 376 S.C. at 556, 658 S.E.2d at 86. While "non-compliance with licensing requirements or with the statutory law in specialized areas should not require, *a fortiori,* a trial court to refuse to qualify a witness as an expert," a trial court can consider it as a factor "when judging a purported expert's qualification." *Id.* When a trial court is "determining a witness's qualification as an expert, [it] should make an inquiry broad in scope." *Id.*

Specifically, the trial court ought to take into account the factors delineated in the rules of evidence, the statutory law, and any other sources of authority that may be relevant to a purported expert witness's level of skill or knowledge; and the trial court must further determine whether the offered testimony will assist the trier of fact.

*Id.* "Although lack of licensing and violations of statutory law may often coincide with a lack of specialized skill or knowledge, these attributes are not always bedfellows." *Id.* at 556–57, 658 S.E.2d at 86.

Professional attempted to qualify Dawkins in the field of engineering and construction. Dawkins held a bachelor's degree in civil engineering from North Carolina State University and a master's degree in civil engineering with a construction management specialty from Georgia Tech. He was licensed in Georgia and North Carolina, but he was not licensed in South Carolina. He had nearly thirty years of experience in civil engineering and construction. He asserted his current practice typically involved diagnosing problems with buildings, including stucco issues. Dawkins observed testing for four days at the building site, and a licensed professional engineer did the testing for him. The trial court requested Professional present Dawkins' particular skills and understanding of South Carolina licensure and building codes. Dawkins stated he was familiar with the applicable building code, the International Building Code of 2000, because it was also used in Georgia. He worked in the coastal region of Georgia, and he asserted there was no distinction in his analysis of construction in Georgia versus construction in South Carolina. However, he admitted he was not familiar with any local modification to the International Residential Code of 2000(IRC).

Respondents opposed his qualification for several reasons, asserting (1) he was an out-of-state professional, (2) he had only been qualified as an expert four times, and only in Georgia, (3) he was not licensed in South Carolina which is a violation of statutory law, (4) he has never designed a building of the type at issue in this case nor has he ever designed a building in South Carolina, (5) he only observed testing in this case and did not conduct any testing of his own, and (6) while he is titled a construction consultant, he has no certification for that designation. The trial court did not qualify Dawkins, stating that it was considering all the information as a whole, "in its entirety," and not relying solely on the fact that he was not licensed in South Carolina.

We find the trial court abused its discretion because it did not delineate any particular reason for its decision to not qualify Dawkins and we believe he held the prerequisite experience needed to testify as an expert under Rule 702, SCRE. *See Wilson v. Rivers*, 357 S.C. 447, 452–53, 593 S.E.2d 603, 605–06 (2004) (finding the trial court erred in not qualifying an expert in the field of biomechanics when he was a medical doctor with a doctorate in human physiology and training in biomechanics and he had been qualified as an expert in the field of biomechanics in other states). Dawkins had a lengthy career in the construction business and explained his extensive educational background. Respondents argue that Dawkins' lack of familiarity with the IRC is a factor to consider in whether he should be qualified; however, Respondents' own expert witness, Glick, stated the IBC was the appropriate code, not the IRC. Thus, Dawkins' familiarity with the IRC or lack thereof should have no bearing upon his qualification as an expert witness. As to Respondents' remaining arguments against Dawkins' qualification, "[a]ny defects in the amount of his education and experience, if any, go to the weight of his testimony and not its admissibility." *Id.* at 453, 593 S.E.2d at 605. We find Dawkins had technical and specialized knowledge that would assist the trier of fact to understand the proximate cause of the water intrusion, and we hold the trial court erred in failing to qualify Dawkins.

Even though we find error in the trial court's decision, Professional must show it was prejudiced by this error to warrant reversal. *See Fields*, 376 S.C. at 557, 658 S.E.2d at

86 (stating that to "warrant reversal based on the admission or exclusion of evidence, the appealing party must show both the error of the ruling and prejudice"). Respondents allege any testimony given by Dawkins would have been cumulative, and, thus, the exclusion of his testimony was harmless.

Professional proffered Dawkins testimony after the jury returned its verdict. Dawkins gave in-depth testimony regarding the water intrusion, which he claimed was caused by incorrect installation of items surrounding the windows, a duty that was not within the scope of Professional's work. Dawkins explained that North Florida Framing was responsible for the improper installation and stated Professional would never have seen the problems when it completed its work. Moreover, he gave definitive testimony in which he said the water intrusion was not proximately caused by Professional's work.

Professional presented another witness, Robert Puschek, for qualification in the areas of construction and restoration with no objection. Respondents claim even if it was error to not qualify Dawkins as an expert, Puschek's testimony mirrored Dawkins' proffered testimony in many ways, and thus, Dawkins' testimony would have been cumulative and its exclusion was harmless. We disagree. Puschek was prevented from critiquing any of Glick's work as an architect because Respondents successfully argued that Puschek was not qualified as an architectural engineer. Puschek was limited in testifying to the needed repairs of the buildings and the pricing of the repairs. Puschek made an estimate of repair and a proposal, but he did not do a forensic analysis of the buildings. Thus, we do not believe Dawkins testimony would have been cumulative. *Compare Fields,* 376 S.C. at 558, 658 S.E.2d at 87 (finding the plaintiffs' expert's testimony would have been cumulative to their other two experts' testimonies, and further, the trial court ruled the other experts would be permitted to say that they relied on the excluded witness's report in reaching their conclusions). The trial court's decision to qualify Respondents' expert witness who testified to the proximate cause of the water intrusion while declining to qualify Dawkins' created a situation where Professional had no expert witness to rebut Respondents' expert witness's testimony.

Respondents argue that Donnie King gave testimony indicating Professional's fault in causing the water intrusion and that considering King's contradictory testimony, it strained "credibility to suggest the verdict would have been any different had Dawkins been allowed to take the stand and essentially disagree with the admissions of the party who hired him to testify." However, any contradictory testimony from King only further highlights the prejudicial nature of excluding Dawkins' testimony.

For the reasons listed above, we find the failure to qualify Dawkins and the resulting exclusion of his testimony was prejudicial error. Accordingly, we reverse the trial court.

**Dawkins Discovery**

█ As an additional sustaining ground for affirming the trial court's decision to exclude Dawkins' testimony, Respondents argue it was an appropriate discovery sanction in response to Professional's failure to produce Dawkins' files, which included field notes. We disagree.

██ "A trial court's decision on whether or not to impose discovery sanctions is reviewed for abuse of discretion." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 82, 716 S.E.2d 877, 885 (2011) (citing *Jamison v. Ford Motor Co.*, 373 S.C. 248, 270, 644 S.E.2d 755, 766 (Ct.App.2007)). " 'In deciding what sanction to impose for failure to disclose evidence during the discovery process, the trial court should weigh the nature of the interrogatories, the discovery posture of the case, willfulness, and the degree of prejudice.' " *Jamison*, 373 S.C. at 270, 644 S.E.2d at 767 (quoting *Samples v. Mitchell*, 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct.App.1997)). "A failure to weigh the required factors demonstrates a failure to exercise discretion and amounts to an abuse of discretion." *Id.* (citing *Samples*, 329 S.C. at 112, 495 S.E.2d at 216).

█ This court has held a trial judge is required to consider and evaluate the following factors before imposing the sanction of exclusion of a witness: (1) the type of witness involved; (2) the content of the evidence emanating from the proffered witness; (3) the nature of the failure or neglect or refusal to furnish the witness' name; (4) the degree of surprise to the other party, including the prior knowledge of the name of the

witness; and (5) the prejudice to the opposing party. *Jumper v. Hawkins,* 348 S.C. 142, 152, 558 S.E.2d 911, 916 (Ct.App. 2001). " '[T]he sanction of exclusion of a witness should never be lightly invoked.' " *Barnette v. Adams Bros. Logging, Inc.,* 355 S.C. 588, 592, 586 S.E.2d 572, 574 (2003) (quoting *Jackson v. H & S Oil Co.,* 263 S.C. 407, 411, 211 S.E.2d 223, 225 (1975)).

Professional explained it did not realize it had failed to produce some of the materials until it received an email from Respondents regarding the matter. Professional stated it would avoid using any material that was not produced. Further, it stated Dawkins was designated as an expert on liability for over a year prior to trial, and, therefore, Respondents had ample time to depose him and determine the subject of his testimony. Finally, Professional asserted it would be severely prejudiced if Dawkins was not allowed to testify. When the trial court adjourned the trial for the day to make its decision, Professional offered to make Dawkins available to Respondents for depositions. One of the Respondents' attorneys accepted the offer and deposed Dawkins. When the trial resumed, the trial court declined to qualify Dawkins but did not mention the discovery violation as a basis for its decision at that time.

We do not think it is proper to sustain the trial court's decision under this ground for the following reasons: (1) Professional stated it would avoid using the materials that were not produced, (2) the trial court did not state its decision to exclude Dawkins' testimony was based on a discovery violation, (3) Professional made Dawkins available for depositions overnight prior to taking the stand, and (4) only one of the Respondents accepted the offer to depose or interview Dawkins. The sanction of excluding a witness's testimony should not be invoked lightly, and we find it was not appropriate here. Accordingly, we adhere to our decision to reverse the trial court's decision to exclude Dawkins' testimony.

Because we reverse based upon Professional's first issue, we need not reach its remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) ("[A]n appellate court need not address

remaining issues when disposition of prior issue is dispositive.").

**Summary Judgment in Favor of APS**

■ Professional contends the trial court erred in granting APS's motion for summary judgment. Professional maintains it lawfully operated as an unlicensed subcontractor under Summit's license pursuant to section 40–11–270(C) of the South Carolina Code (2011), and therefore is not barred from bringing an action at law or in equity against APS under section 40–11–370(C) of the South Carolina Code (2011). We agree.

Section 40–11–370(C) states that "[a]n entity which does not have a valid license as required by this chapter may not bring an action either at law or in equity to enforce the provisions of a contract. . . . ."

Section 40–11–30 of the South Carolina Code (2011) provides the licensing requirements for the chapter, and it provides:

No entity or individual may practice as a contractor by performing or offering to perform contracting work for which the total cost of construction is greater than five thousand dollars for general contracting or greater than five thousand dollars for mechanical contracting without a license issued in accordance with this chapter.

A contractor is defined as a general or mechanical contractor regulated under this chapter. S.C.Code Ann. § 40–11–20(4) (2011). A general contractor is an entity that performs or supervises or offers to perform or supervise general construction. § 40–11–20(9).

However, Professional claims it did not need a license pursuant to section 40–11–270(C), which states:

Licensees may **utilize the services of unlicensed subcontractors to perform work within the limitations of the licensee's license group and license classification or subclassification; provided, the licensee provides supervision.** The licensee is fully responsible for any violations of this chapter resulting from the actions of unlicensed subcontractors performing work for the licensee.

(emphasis added). A subcontractor is an entity who contracts to perform construction services for a prime contractor, which is one who contracts directly with an owner to perform general or mechanical construction, or another subcontractor. § 40–11–20(17), (22).

■■■ McGinty, one of Summit's project managers for Fenwick, acknowledged that Summit would provide the materials and supervise the work at the breezeway. Pursuant to section 40–11–270(C), Summit, as the licensee, was permitted to utilize Professional's services even though Professional was unlicensed. Further, Summit was allowed to utilize APS's services even though it was unlicensed. Moreover, we note the pertinent licensing statutes are intended to protect the public interest. S.C.Code Ann. § 40–1–10(A)–(B) (2011). The purpose of protecting the public interest by denying enforceability does not exist when dealing with claims between contractors. *See Kennoy v. Graves,* 300 S.W.2d 568 (Ky.App.1957) ("The statute involved, and similar ones, are designed to protect the public from being imposed upon by persons not qualified to render a professional service. The reason for the rule denying enforceability does not exist when persons engaged in the same business or profession are dealing at arm['s] length with each other. In the case before us, appellant was in a position to know, and did know, the qualifications of appellee. No reliance was placed upon the existence of a license, as presumptively would be the case if appellee was dealing with the general public.").

Accordingly, we find Professional was not required to have a license under the applicable statutory chapter, and, thus, section 40–11–370(C) does not preclude Professional from bringing a claim against APS. For these reasons, we reverse the trial court's grant of summary judgment.

**CONCLUSION**

For the foregoing reasons, we reverse the trial court on the first issue regarding the qualification of Professional's expert witness, Dawkins, and remand this case for a new trial. In regard to the trial court's grant of summary judgment in favor of APS, we also reverse.

**REVERSED.**

HUFF and GEATHERS, JJ., concur.