**MIDSOUTH STEEL, INC., Plaintiff,**

v.

**DPR CONSTRUCTION, INC. and Liberty Mutual Insurance Company, Defendants.**

**Liberty Mutual Insurance Company and DPR Construction, Inc., Counterclaimants,**

v.

**Midsouth Steel, Inc., Counterdefendant.**

Civil Action No.: 2:15–cv–4620–RMG

United States District Court, D. South Carolina, Charleston Division.

Signed July 13, 2016

Norman Ward Lambert, Wesley Benjamin Lambert, Harper Lambert and Brown, Greenville, SC, for Plaintiff.

Caitlin C. Heyward, Edward Wade Mullins, III, Henry P. Wall, Bruner Powell Robbins Wall and Mullins, Columbia, SC, for Defendants.

## ORDER

Richard Mark Gergel, United States District Court Judge

This matter is before the Court on the parties' motions for summary judgment. (Dkt. Nos. 7, 26). For reasons discussed below, the Court **DENIES** Defendants' motion for summary judgment (Dkt. No. 7) and **GRANTS** in part and **DENIES** in part Plaintiff's motion for summary judgment (Dkt. No. 26).

### I. Background

This matter arises out of a hotel construction project in Charleston, South Carolina. Defendant DPR Construction, Inc. was the general contractor on the project. On November 15, 2013, Defendant subcontracted the "Structural Steel, Miscellaneous Steel, [and] Stairs" work to Plaintiff Midsouth Steel, Inc. (*See* Dkt. No. 7–4 at 26–27 (detailing the scope of the work)). Defendant holds a BD5 "General Contractors–Building" license. (Dkt. No. 7–3). Plaintiff does not have a South Carolina contractor's license. (Dkt. No. 7–5).

Before Plaintiff finished the work, the hotel project was terminated for default. Plaintiff subsequently filed this action to enforce the subcontract (Dkt. No. 1–1), and Defendant filed a counterclaim for breach of contract (Dkt. No. 4 at 6). Defendant filed a motion for summary judgment alleging that Plaintiff's claim was barred by S.C. Code Ann. § 40–11–370(c) because Plaintiff is not a properly licensed contractor. (Dkt. No. 7). Plaintiff then filed a competing motion for summary judgment, asserting, in relevant part, that its claim was not barred because the work it performed did not require it to be licensed. (Dkt. No. 26).

### II. Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dis-

pute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *Health-South Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324, 106 S.Ct. 2548. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' " in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Trans p., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

Generally, "[n]o entity or individual may practice as a contractor ... without a license." S.C. Code Ann. § 40–11–30. However, a licensed contractor "may utilize the services of unlicensed subcontractors to perform work within the limitations of the licensee's license group and license classifi-

cation or subclassification; provided, the licensee provides supervision." S.C. Code Ann. § 40–11–270(c). If an entity is unlicensed and does not fall within this exception, it "may not bring an action either at law or in equity to enforce the provisions of a contract." S.C. Code Arm. § 40–11–370.

Here, there is no dispute that Plaintiff is unlicensed. The only disputes are (1) whether Plaintiff's work was within the limitations of Defendant's license, and (2) whether Defendant provided supervision within the meaning of § 40–11–270(c). If the Court answers each answer in the affirmative, Plaintiff may proceed with its action. The Court now addresses each issue in turn.

### A. Whether Plaintiff's work was within the limitations of Defendant's license

Defendant holds a BD5 license, which authorizes it to do all work falling under the "General Contractors–Building" classification. The "General–Contractors Building" classification includes all types of building construction; "all work under the subclassifications of Wood Frame Structures–Class II, Interior Renovation, Masonry, Pre-engineered Metal Buildings, General Roofing, and Structural Shapes;" and "ancillary work ... associated with the building or structure which the licensee has been engaged to construct." S.C. Code Ann. § 40–11–410(1). The license expressly excludes "work performed under a Mechanical Contractor subclassification" and work that falls under the "Swimming Pools, Bridges, Boring and Tunneling, Water and Sewer Lines, Pipe Lines, Railroad Lines, Specialty Roofing, Marine, Water and Sewer Plants, and Asphalt Paving" classifications and subclassifications. *Id.*

Plaintiff was subcontracted to do work that falls under the "General Roofing,"

"Structural Shapes," and "Structural Framing" contractor's license subclassifications. (*See* Dkt. No. 7–4 at 26–27 (detailing the scope of the work); *see also* Dkt. No. 26–1 at 6 n.2). Because "General Roofing" and "Structural Shapes" are expressly included in Defendant's general contractor license, Plaintiff is not barred from bringing an action to enforce contractual provisions as they relate to this work, provided Defendant supervised Plaintiff within the meaning of § 40–11–270(c). It is less readily apparent, however, whether Plaintiff's "Structural Framing" work is "ancillary work" associated with the hotel construction project that would also be included in Defendant's general contractor license.

■ Because the licensing statute does not define "ancillary work," the Court first turns to the plain language of the statute. When interpreting the plain language of the statute, the Court "give[s] the words their ordinary, contemporary, common meaning." *Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Merriam–Webster Dictionary defines "ancillary" as "subordinate, subsidiary," "auxiliary, [or] supplemental." http://www.merriamwebster.com/dictionary/ancillary (last visited June 30, 2016). More plainly, if something is ancillary, it "provid[es] something additional to a main part or function." *Id.*

■ Here, the statutory language alone is inconclusive. On one hand, the work of furnishing and installing all structural steel is subordinate or secondary to the work of building the hotel; structural steel is not the primary focus of the overall project. On the other hand, ancillary may suggest a merely incidental role. In this vein, Defendant argues that structural steel work cannot be ancillary work because "it is a necessary component without which the building cannot stand." (Dkt. No. 33 at 5).

To determine which interpretation is more plausible, the Court next turns to the statute's structure. The "General Contractors–Building" license includes "Grading" as ancillary work. S.C. Code Ann. § 40–11–410(1) ("Licensees under this classification may perform ancillary work, including grading, associated with the building or structure which the licensee has been engaged to construct."). Few would argue that grading—the act of moving land to ensure a level foundation—is not a necessary component of the construction process for many buildings, especially for multi-story buildings. Accordingly, work can be both necessary and ancillary within the meaning of this statute. To the extent that the structural framing work is secondary—that is, to the extent that it is not the focus of the construction project—it is ancillary work.

This conclusion is supported by additional elements of the statute's structure and the South Carolina Contractor's Licensing Board's interpretation of the statute. Turning first to the structure, the statute specifically excludes work performed under several licensing classifications and subclassifications. The absence of "Structural Framing" and several other subclassifications from the list of exclusions suggests that the drafters intended for some work falling under those categories to qualify as "ancillary work." *See Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578, 582 (2000) (applying the canon of construction *expressio unius est exclusio alterius*" or "*inclusio unius est exclusio alterius'* " to hold that a statute that specifically exempted ten boards of directors but did not exempt another evinced the General Assembly's intent not to exempt the unnamed board).

And finally, the Licensing Board, which is tasked with the "administration and enforcement" of South Carolina's contracting licenses, S.C. Code Ann. § 40–11–10, con-

siders structural framing work to be ancillary work under the General Contractors–Building license in situations such as these. (*See* Dkt. Nos. 27–2, 27–3). Although the Licensing Board's interpretation is not binding, the Court finds it to be persuasive in light of the statutory language and structure.

Accordingly, the Court finds, as a matter of law, that the structural framing work Plaintiff was subcontracted to do on the hotel project is "ancillary work" within the meaning of the statute.

### B. Whether Defendant supervised Plaintiff's work

S.C. Code Ann. § 40–11–370(c) bars actions from entities without "a valid license *as required by this chapter*." (emphasis added). To determine whether Plaintiff was required to have a valid license to perform its structural framing work, the Court must determine whether Defendant "provide[d] supervision" within the meaning of S.C. Code Ann. § 40–11–270(c). If Defendant provided supervision, it was permitted to subcontract Plaintiff's ancillary work (and Plaintiff's work structural shapes and general roofing work expressly permitted by Defendant's BD5 license), despite the fact that Plaintiff is unlicensed. *See id.* ("Licensees may utilize the services of unlicensed subcontractors . . . ; provided, the licensee provides supervision.").

Again, the statute does not define "supervision." The plain and ordinary meaning of "supervise" is "to be responsible for the good performance of an activity or a job, or for the correct behavior or safety of a person." Cambridge Dictionary Online, http://dictionary.cambridge.org/dictionary/english/supervise (last visited June 30, 2016).

■ Using the plain and ordinary definition, there is no dispute that Defendant supervised Plaintiff's work. According to Plaintiff, Defendant (a) provided daily direction in the areas where work was being done; (b) directed the work to be performed through daily communications an mandatory meetings; (c) controlled access to work areas and setting work hours by directing when work was to be performed and not allowing Plaintiff to perform work when Defendant was not on site to supervise; (d) setting the number of persons allowed to be on site, and in some cases, demanding that Plaintiff make personnel changes; (e) inspecting work on a daily basis and making decisions when to call in third-party inspectors to approve work; (f) stopping work for jobsite meetings; (g) directing procedure for addressing safety concerns; (h) overseeing Plaintiff's work and directing the manner in which Plaintiff's work was to be performed; and (h) stopping work where Defendant believed Plaintiff's work was incorrect, among other things. (Dkt. No. 28). Defendant does not contest Plaintiff's assertion, and confirms that these activities describe "the ordinary typical obligations of any reasonably prudent general contractor." (Dkt. No. 33 at 7).

■ The Court applies a statute's plain meaning unless one of two narrow exceptions exists: (1) literal application of the statutory language results in an absurd result that is so gross as to shock the general moral or common sense; or (2) literal application of the statutory language is at odds with legislative intent. *See Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578, 582 (2000) (citing *S. Carolina State Bd. of Dental Examiners v. Breeland*, 208 S.C. 469, 38 S.E.2d 644, 650 (1946)); *see also In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004) (describing the "Plain Meaning Rule" and its narrow exceptions).

Appealing to the first exception, Defendant argues that "[a] logical and common

sense reading of the statute would suggest that the term 'supervise' must necessarily mean something more than a general contractor merely engaging a subcontractor as an independent contractor, and then overseeing the completion of the entire work." (Dkt. No. 33 at 7). Otherwise, it reasons, the supervision "requirement is met and fulfilled every time a subcontractor is engaged by a general contractor, and the exception becomes the rule, thus making the statute completely nonsensical." (*Id.*) The Court finds this argument to be unavailing.

As a preliminary matter, the statute makes licensed contractors fully responsible for any violations of the chapter. S.C. Code Ann. § 40–11–270(c) ("The licensee is fully responsible for any violations of this chapter resulting from the actions of unlicensed subcontractors performing work for the licensee."). It is not absurd for the General Assembly to create a statute that has the effect of holding licensed contractors liable for every possible statutory violation committed by the unlicensed subcontractors they hire and supervise. Indeed, this appears to be a perfectly logical way to encourage licensed contractors to hire licensed subcontractors.

In addition, the two South Carolina Court of Appeals cases that have touched on the issue of supervision under § 40–11–270(c) provide further support for the plain meaning interpretation of the word. *See Teseniar v. Prof'l Plastering & Stucco, Inc.*, 407 S.C. 83, 754 S.E.2d 267, 274 (Ct. App. 2014), *reh'g denied* (Feb. 20, 2014); *Insulation Supply Co. v. Anderson Area Med. Ctr., Inc.*, No. 2005–UP–300, 2005 WL 7083689, at *4 (S.C. Ct. App. Apr. 27, 2005). In both cases, the court upheld the ability of an unlicensed subcontractor to perform work that fell within the limitations of a supervising contractor's. The fact that the court of appeals did not elaborate on the definition of supervision in either case suggests that the court employed the term's ordinary meaning.

The Court thus finds that Defendant supervised Plaintiff within the meaning of 40–11–270(c).

## IV.  Conclusion

Because Plaintiff's work fell within the limitations of Defendant's license and Defendant supervised Plaintiff's work, South Carolina's statutes governing contractors do not require Plaintiff to have a license to complete the work it was subcontracted to perform. Accordingly, Plaintiff's action is not barred. *See* S.C. Code Ann. § 40–11–370(c) ("An entity which does not have a valid license *as required by this chapter* may not bring an action either at law or in equity to enforce the provisions of a contract.") (emphasis added). For the above-mentioned reasons, the Court DENIES Defendants' motion for summary judgment (Dkt. No. 7), and GRANTS Plaintiff's motion for summary judgment in part (Dkt. No. 26). The Court DENIES Plaintiff's alternative request to dismiss Defendant's counterclaims as moot (Dkt. No. 26), and DENIES Defendants' request to certify the questions regarding the interpretation of the licensing statute to the South Carolina Supreme Court (Dkt. No. 33 at 12–13).

**AND IT IS SO ORDERED.**