LAND RESOURCES DEVELOPMENT, A CALIFORNIA CORPORATION, APPELLANT, v. KAISER AETNA, A CALIFORNIA GENERAL PARTNERSHIP, RESPONDENT.

KAISER AETNA, A CALIFORNIA GENERAL PARTNERSHIP; AETNA LIFE INSURANCE COMPANY; TEMECULA PROPERTIES, INC.; WESTWARD PROPERTIES, INC.; KAISER RANCHO CALIFORNIA, INC.; AND KAISER HAWAII KAI DEVELOPMENT COMPANY, APPELLANTS, v. HOLLAND PACIFIC HITCH COMPANY, RESPONDENT.

No. 12336

January 25, 1984                                     676 P.2d 235

---

*Burd, Friedman, Bartko & Welsh,* San Francisco; *Fahrenkopf, Mortimer, Sourwine, Mousel & Sloane,* Reno, for Land Resources.

*Miller, Starr & Regalia,* Oakland; *Lionel, Sawyer & Collins,* Reno, for Kaiser, et al.

*Lester H. Berkson,* Zephyr Cove; *Hale, Lane, Peek, Dennison & Howard,* Reno, for Holland Pacific.

## OPINION

*Per Curiam:*

Respondent and cross-appellant, Kaiser Aetna (Kaiser), was a general partnership engaged in the business of buying, selling and developing real property. Kaiser owned eighty-four approved condominium lots in a Lake Tahoe area subdivision known as Pinewild. At some time in 1976, the partners of Kaiser decided to dissolve the partnership and liquidate their assets. Consequently, a number of land developers were informed that the eighty-four Pinewild lots owned by Kaiser were for sale.

Several parties expressed an interest in purchasing the Pinewild property. Appellant, Land Resources Development (Land Resources), and Holland Pacific Hitch Company (Holland Pacific), respondent in this consolidated action, both submitted

offers to purchase the property. On March 14, 1977, Kaiser accepted the offer submitted by Land Resources.

The purchase and sale agreement between Kaiser and Land Resources required an immediate initial deposit of $35,000.00 to open escrow, with the balance to be paid within twenty days after execution of the agreement. Land Resources' initial check for $35,000.00 was made payable to the title company, rather than to Kaiser. When Kaiser attempted to negotiate a new check made payable to Kaiser, it was returned for insufficient funds. Thereafter, Land Resources assured Kaiser that funds were available to cover the check. Kaiser again attempted to negotiate the check, and once again, it was returned for insufficient funds.

After Land Resources' check was dishonored the second time, Kaiser advised the defaulting purchaser that the sales agreement would be terminated unless Kaiser received a cashier's check for $35,000.00 on or before the date scheduled for the close of escrow. Kaiser did not receive the funds on the date specified. Consequently, Kaiser deemed its agreement with Land Resources terminated, and commenced negotiations with Holland Pacific.

On April 19, 1977, counsel for Land Resources wrote a letter to Kaiser's Division Manager, Mr. Kalman Rowan, which stated:

> We have been asked to advise you that our client intends to enforce its rights under the Agreement. We seek a meeting with you to discuss the issues. If we have not heard from you on or before Monday, April 25, 1977, we have been instructed to file suit to enforce the terms and conditions of the Agreement of Purchase and Sale.

On April 20, 1977, negotiations between Kaiser and Holland Pacific concluded with an agreement to sell Pinewild to Holland Pacific for 1.5 million dollars, with escrow to close on April 29, 1977. During the course of negotiations between Holland Pacific and Kaiser, there was no mention of the previous transaction with Land Resources or of Land Resources' threat to file suit.

On May 8, 1977, Land Resources filed suit against Kaiser seeking specific performance of the earlier agreement between the parties. Land Resources also recorded a lis pendens on the property. A short time later, Land Resources amended its complaint to join Holland Pacific as an additional defendant.

Holland Pacific brought a cross-claim against Kaiser for fraud, negligent misrepresentation, indemnity and breach of

covenant of marketable title. With the exception of the indemnity claim, Holland Pacific's claims against Kaiser were specifically conditioned upon a finding of liability against Holland Pacific and Kaiser in favor of Land Resources.

In turn, Kaiser counterclaimed against Land Resources for damages occasioned by its alleged breach of contract.

On the eve of trial, Holland Pacific entered into a settlement agreement with Land Resources. Pursuant to the terms of the settlement, Land Resources agreed to dismiss its claims against Holland Pacific and lift the lis pendens from the property. In exchange, Holland Pacific agreed to sell twenty-six of the eighty-four Pinewild lots to Land Resources for $611,000.00

After a lengthy jury trial, a general verdict was entered in favor of Kaiser and against Land Resources. Additionally, the jury found against Kaiser on its counterclaim. The jury also awarded Holland Pacific $347,840.00 on its cross-claim against Kaiser.

At the outset, Land Resources challenges the district court's jury instruction defining "bad faith," contending the instruction was clearly erroneous and misleading.

The district court defined "bad faith" as follows: "[b]ad faith implies fraud and concealment." It is Land Resources' position that by equating the term "fraud" with "bad faith," the jury believed they had to find clear and convincing evidence of fraud before they could find Kaiser acted in bad faith.

Under certain circumstances, the word "fraud" has been found to be synonymous with "bad faith." *See* Schaffer v. Wolbe, 148 S.E.2d 437 (Ga.App. 1966) (". . . bad faith involves actual or constructive fraud or a design to mislead or deceive another, or a neglect or a refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake, but prompted by some sinister motive."); Pabst Brewing Co. v. Nelson, 236 P. 873 (Okl. 1925) (the term "bad faith" means with actual intent to mislead or deceive another; "bad faith" and "fraud" synonymous).

Generally, however, the concepts of "bad faith" and "fraud" are separate and distinct, requiring the allegation and proof of different elements. *See* Pixley v. First Fed. Sav. & Loan, 243 P.2d 100 (Cal.App. 1952).

Our review of the evidence in this case, however, reveals that Land Resources did not present a prima facie case of bad faith against Kaiser-Aetna under any definition of the term. The evi-

dence shows that throughout its negotiations with Land Resources, Kaiser exhibited the utmost good faith. After having twice unsuccessfully attempted to negotiate Land Resources' initial down payment check, Kaiser provided Land Resources the opportunity to make payment up to the date scheduled for the close of escrow. Nonetheless, Land Resources failed to produce the requisite funds, and Kaiser justifiably concluded that the contract had been breached. Here, evidence of bad faith is clearly lacking.

Under the circumstances of this case, we are convinced that under any definition of "bad faith," the jury would have returned a verdict against Land Resources as it did. Thus, the definition of the term "bad faith" as propounded by the district court was, if error, harmless error which does not warrant reversal. *See* Truckee-Carson Irrigation District v. Wyatt, 84 Nev. 662, 448 P.2d 46 (1968), *cert. denied,* 395 U.S. 910 (1969).

Land Resources also contends the district court erred when it admitted evidence of two prior civil judgments against its corporate president, Bruce Seymour.

At trial, Kaiser introduced evidence of two previous civil judgments against Mr. Seymour, in the amount of $3,637.79 and $4,762.36. Land Resources objected to the introduction of these prior civil judgments, claiming they were irrelevant and highly prejudicial. The district court ruled the evidence admissible, as relevant to prove whether Land Resources had the financial wherewithal to make a timely purchase of the Pinewild property.

In F/V American Eagle v. State, 620 P.2d 657 (Alaska 1980), the Court discussed appellate review of allegedly prejudicial evidence, and stated: "[i]f the evidence is relevant, reversal is appropriate only where its prejudicial effect so outweighs its probative value that admission constitutes a clear abuse of discretion." *Id.* at 672. Evidence is considered relevant where it ". . . has some tendency in reason to establish a proposition material to the case." *Id. See also* NRS 48.015-48.035.

The record in the court below indicated that evidence regarding Bruce Seymour's financial stability and access to personal funds was presented by Land Resources in order to prove that Land Resources had the financial wherewithal to cover its initial $35,000.00 down payment check. Evidence of prior outstanding civil judgments against Seymour therefore became relevant to establish whether Land Resources could secure financing and purchase the property in dispute. A review of the record does not establish that the probative value of the evi-

dence was outweighed by its alleged prejudicial effect. Consequently, we conclude the district court did not err in admitting the challenged evidence, and affirm the verdict against Land Resources.

In a consolidated appeal, Kaiser challenges the verdict in favor of Holland Pacific against Kaiser. For the reasons set forth hereinafter, we must reverse that verdict and remand for a new trial between those two parties.

Kaiser's primary assignment of error concerns the jury instruction given regarding the issue of whether marketable title was conveyed to Holland Pacific.

The trial court's instruction on marketable title reads as follows:

> The fact that title to Pinewild Unit No. 2 may be found to have been properly conveyed to Holland Pacific Hitch Company by Kaiser Aetna does not make it marketable, where it is in such a condition as to raise the *possibility* that Holland Pacific Hitch Company will be involved in litigation to establish or secure it. (Emphasis added.)

Kaiser's rejected jury instruction states:

> Under the laws of the State of Nevada, a Seller warrants that title conveyed to a purchaser is 'marketable.' Whether the title is in fact 'marketable' is a question of fact to be determined by the trier of fact. The question however, is whether title is free from reasonable doubt of defect. *The mere threat or possibility of a lawsuit will not be sufficient to render title unmarketable. There must be a reasonable probability of litigation.* (Emphasis added.)

There is no "bright-line" standard or uniform definition of "marketable title." The authorities are clear, however, in holding that a mere possibility of litigation regarding title does not render title unmarketable. As was stated in Whittier Estates v. Manhattan Savings Bank, 48 N.Y.S.2d 111 (App.Div. 1944):

> A purchaser is entitled to a good marketable title—a title free from all reasonable doubt (citations omitted), but that does not mean free from all possible doubt; if that were so, few titles could be held marketable. As Chief Judge Cardozo put it: '[t]he law assures to a buyer freedom from reasonable doubt, but not from every doubt.' (Citations omitted.) There must be some fairly debatable ground more than a mere speculation or a bare possibility. (Citations omitted.)

> The test is not the hazard of *possible litigation,* for, as has been pointed out, 'it seems to be the unalienable right of any person to start a lawsuit.' *The test is rather the chance of successful attack.* (Emphasis added.)

*Id.* at 114. *See also* Fabricant v. Hyed Realty Corp., 233 N.Y.S.2d 796 (App.Div. 1962).

We agree that in many instances the test would be whether there was a reasonable probability that a reasonably meritorious claim existed against the property. *See, e.g.,* Gaub v. Nassau Homes, Inc., 147 A.2d 73 (N.J. 1958); Brown v. Herman, 454 P.2d 212 (Wash. 1969). In the instant case, however, Kaiser was in possession of a written threat of litigation from the party with whom it had previously contracted concerning the property in issue. Kaiser did not apprise Holland Pacific of the threat prior to the latter's acquisition of the property. Moreover, the evidence reflects the apparent necessity for the timely development of the property by Holland Pacific in order to maximize its profit potential. Arguably, Kaiser sold the property to Holland Pacific realizing that it was reasonably probable that Land Resources would implement its threatened litigation and cause delay in project development and marketing of end units with resultant loss to Holland Pacific. Contrarily, Kaiser may contend that the meritless nature of Land Resources' claim rendered the likelihood of a lawsuit with resulting damage remote. In either case, the jury must weigh the evidence, draw whatever inferences are most reasonable and make a decision. The test must be whether there was a reasonable probability of litigation with a reasonable probability of resulting damage.

The trial court erred in instructing the jury that the *possibility* of litigation in establishing or securing title rendered the title unmarketable. The instruction under the circumstances of this case must comport with the standard we have enunciated. We cannot say, as a matter of law, that when so instructed, the jury would necessarily arrive at the same decision. Marketable title to real property should not be called into question by the mere possibility of litigation. Such a rule could facilitate bizarre results and unreasonably impede the marketability of real property. Upon retrial, the parties may, of course, introduce competent evidence bearing on the test of marketability as we have defined it in this opinion.

Turning now to the cause of action for negligent misrepresentation, when the case is retried, Holland Pacific will have to

present a prima facie cause of action against Kaiser by showing, within the context of the law pertaining to marketability as declared in this opinion, that there was a duty on Kaiser's part to accurately inform Holland Pacific of Land Resources' threatened lawsuit, a breach of that duty, and resultant harm. *See* Driscoll v. Erreguible, 87 Nev. 97, 482 P.2d 291 (1971). In order to show a breach of duty, Holland Pacific must prove that Kaiser's failure to inform it of Land Resources' threat was in violation of the "reasonable man" standard, *i.e.,* that a reasonable man, under the circumstances, would have so informed Holland Pacific. Driscoll v. Erreguible, *supra.*

We have also considered Holland Pacific's claim for relief based on a theory of indemnity and have concluded it is without merit. Assuming arguendo, that Kaiser was under an obligation to indemnify Holland Pacific against Land Resources' claims, it does not follow that Kaiser should be held to answer for Holland Pacific's settlement with Land Resources. The court instructed the jury as follows:

> Where an indemnitee unjustifiably refuses to accept the indemnitor's offer of defense, the indemnitee proceeds at his own risk with regard to any judgment or settlement which may ultimately ensue, and thereafter, in order to recover reimbursement, he must establish by a preponderance of the evidence that:
> 1. he would have been liable
> 2. there was no good defense to liability
> 3. the amount of settlement was reasonable.

In light of the instruction, it would be implausible for the jury to have found that Kaiser was bound to indemnify Holland Pacific for the settlement it achieved with Land Resources. The jury instruction was properly specific in its requirement that recovery on an indemnity theory be predicated on the fulfillment of two requisites: first, that the indemnitee was *legally liable* to the party with whom settlement was made, and secondly, that settlement was reasonable. *See* Globe Indemnity v. Schmitt, 53 N.E.2d 790 (Ohio 1944). *See also* Cheney v. City of Mountlake Terrace, 583 P.2d 1242 (Wash.App. 1978). We need not address the second element. Since the jury found Kaiser free of liability to Land Resources, Holland Pacific could not, as a matter of law, have been liable to Land Resources.

In summary, the trial court fatally erred in instructing the jury on the issue of marketable title. Under such an instruction the jury needed only to conclude that a possibility of litigation

existing at the time of Kaiser's sale to Holland Pacific constituted a valid basis for a finding of liability against Kaiser. The trial court should have instructed the jury in accordance with the standard of reasonable probability of litigation and resultant damage as we have previously stated. If this had been done, the outcome could have been different.

The instruction on marketability of title also infected the claims sounding in negligent representation and fraud. Such claims may now be viewed in a new light if the jury determines that the threat of suit by Land Resources did not constitute a reasonable probability of litigation and a reasonable probability of resulting damage to Holland Pacific.

As a matter of law, Kaiser was not liable to Holland Pacific for indemnity since the jury eliminated the possibility of Holland Pacific proving its derivative liability to Land Resources when it entered its verdict against the latter party and in favor of Kaiser.

In view of our disposition of this case, we deem it unnecessary to address other issues raised by the parties.

The judgment upon the verdict is affirmed with the exception of that part of the judgment entered in favor of Holland Pacific and against Kaiser; as to the latter, it is reversed and remanded for a new trial.