OPINION OF THE COURT
Cynthia S. Kern, J.
Plaintiff commenced this personal injury action against defendants to recover for injuries sustained in an automobile *1000 accident. He has brought the present application to preclude defendants’ proposed expert, Dr. Charles Coward, from testifying at trial. On March 3, 2009, this court held a Frye hearing to determine whether Dr. Coward, a biomechanical engineer, should be allowed to testify as to his opinion that the plaintiff could not have sustained a meniscus tear and a serious injury to his lumbar spine based on the way that the accident occurred. The parties then submitted posthearing memoranda on April 1, 2009, as directed by the court. For the reasons set forth below, plaintiffs motion to preclude Dr. Coward’s testimony at trial is granted.
Defendants’ proposed expert, Dr. Coward, has an undergraduate degree in mechanical engineering and physics, a Master’s degree in physics, a medical degree and a postdoctoral fellowship in biomechanical engineering. Although he has a medical degree, he is not licensed to practice medicine and has never done so other than during a three-month residency in pathology. He is currently employed as a biomechanical engineer. Defendants seek to have Dr. Coward testify as to the forces involved in the subject accident and whether or not they could have caused the injuries claimed by plaintiff. In order to determine the forces involved in the accident, Dr. Coward examined photos of the impacted vehicle after the accident, repair records, and characteristics such as the weight, dimensions and center of gravity of the involved vehicles in order to determine the change in velocity (the Delta V) the impacted vehicle experienced upon impact. After determining the Delta V, he calculated the severity and direction of the force that was applied to the vehicle. He then analyzed the way plaintiff moved in the incident due to the impact. Finally, by analyzing the forces felt in the impact and the way plaintiff moved in the impact, he allegedly determined that plaintiff could not have sustained a meniscus tear and a serious injury to his lumbar spine based on the way that the accident occurred.
In order for scientific expert testimony to be admitted at trial, the procedure and results must be “generally accepted as reliable in the scientific community.” (Styles v General Motors Corp., 20 AD3d 338, 341 [1st Dept 2005]; Frye v U.S., 293 F 1013 [DC Cir 1923].) The most common ways an expert may establish that his methodology has been generally accepted is by citing to peer-reviewed literature in the field, by showing that independent studies have been done using this methodology and that the results have been duplicated and by establishing that the *1001 studies were done on a statistically significant number of subjects. (See Styles, 20 AD3d 338 [2005]; Fraser v 301-52 Townhouse Corp., 57 AD3d 416, 418-419 [1st Dept 2008]; Lara v New York City Health & Hosps. Corp., 305 AD2d 106 [1st Dept 2003]; Saulpaugh v Krafte, 5 AD3d 934 [3d Dept 2004].) The question for the court at a Frye hearing is “whether the proffered expert opinion properly relates existing data, studies or literature to the plaintiffs situation, or whether, instead, it is ‘connected to existing data only by the ipse dixit of the expert.’ ” (Marsh v Smyth, 12 AD3d 307, 312 [1st Dept 2004, Saxe, J., concurring].) Moreover, when the expert cites no scientific literature at all, the court must preclude the expert’s testimony. (See Marsh, 12 AD3d at 313 [Saxe, J., concurring].) For example, in Lara, the First Department held that where the plaintiff’s expert could not cite a single reported medical case or formal study to support his theory, his testimony must be precluded. (See 305 AD2d 106 [2003]; see also Selig v Pfizer, Inc., 290 AD2d 319 [1st Dept 2002]; Clemente v Blumenberg, 183 Misc 2d 923 [Sup Ct, Richmond County 1999].) Similarly, the Second Department has affirmed the preclusion of the testimony of plaintiff’s expert where he could point to no scientific data or studies or provide even anecdotal evidence that supported his conclusion. (See Cumberbatch v Blanchette, 35 AD3d 341 [2d Dept 2006].) Courts in other jurisdictions have also excluded expert testimony based on the lack of reliable (or any) scientific literature cited by the expert. (See Suanez v Egeland, 353 NJ Super 191, 801 A2d 1186 [2002]; Smelser v Norfolk S. Ry. Co., 105 F3d 299 [6th Cir 1997].)
Although the Second and Fourth Departments have held that a biomechanical engineer may testify as to whether the forces experienced by a plaintiff in a motor vehicle accident could cause the complained-of injuries, those cases do not describe the basis for their holdings. (See Plate v Palisade Film Delivery Corp., 39 AD3d 835 [2d Dept 2007]; Cardin v Christie, 283 AD2d 978 [4th Dept 2001].) Neither the Second Department in Plate nor the Fourth Department in Cardin states whether the proposed expert cited any scientific literature to prove that his theory was “generally accepted.”
Finally, many courts in other jurisdictions have excluded or limited the testimony of biomechanical engineers in motor vehicle accident cases based on the rationale that a biomechanical engineer is not a doctor and therefore may not testify about medical matters such as the cause of injuries. (See e.g. Mattek v *1002 White, 695 So 2d 942 [Fla Dist Ct App, 4th Dist 1997]; Rybaczewski v Kingsley, 1998 WL 200227, 1998 Ohio App LEXIS 1694 [6th Dist, Apr. 24, 1998]; Cromer v Mulkey Enters., Inc., 254 Ga App 388, 562 SE2d 783 [2002]; Benjamin v Appliance & Refrig. Servs., Inc., 2002 WL 1308405, 2002 Del Super LEXIS 392 [June 7, 2002]; Smelser, 105 F3d 299 [1997].)
In the instant case, defendants’ proposed expert, Dr. Coward, may not testify as he failed to show that his theory is “generally accepted.” He did not cite a single piece of scientific literature supporting his methodology. (See Styles, 20 AD3d 338 [2005]; Fraser, 57 AD3d at 418-419; Lara, 305 AD2d 106 [2003]; Saulpaugh, 5 AD3d 934 [2004].) Specifically, Dr. Coward did not cite any studies which showed that a person in a car subject to a low-speed rear-end collision could not suffer serious injuries to his lumbar spine or a meniscus tear based on the way that the accident occurred. Nor could he cite to any studies or literature which even discussed his theory that a person could not sustain certain types of injuries in a low-impact collision. Because he was unable to cite to any studies, articles, journals or other scientific literature which utilized his methodology, Dr. Coward failed to show that his theory is “generally accepted.” This court also agrees with the conclusions reached by courts in other jurisdictions that the testimony should be precluded on the ground that a biomechanical engineer is not a doctor and is therefore not qualified to testify about the causal relationship between a motor vehicle accident and the injuries that the person sustained. (See Mattek, 695 So 2d 942 [1997]; Rybaczewski, 1998 WL 200227, 1998 Ohio App LEXIS 1694 [1998]; Cromer, 254 Ga App 388, 562 SE2d 783 [2002]; Benjamin, 2002 WL 1308405, 2002 Del Super LEXIS 392 [2002]; Smelser, 105 F3d 299 [1997].)
Based on the foregoing, plaintiff’s motion to preclude the testimony of Dr. Coward at trial is granted.