**132 Nev., Advance Opinion 17**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JENNY RISH,<br>Appellant,<br>vs.<br>WILLIAM JAY SIMAO AND CHERYL<br>ANN SIMAO, INDIVIDUALLY AND AS<br>HUSBAND AND WIFE,<br>Respondents. | No. 58504 |

**FILED**

**MAR 17 2016**

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

| | |
|---|---|
| JENNY RISH,<br>Appellant,<br>vs.<br>WILLIAM JAY SIMAO AND CHERYL<br>ANN SIMAO, INDIVIDUALLY AND AS<br>HUSBAND AND WIFE,<br>Respondents. | No. 59208 |

| | |
|---|---|
| JENNY RISH,<br>Appellant,<br>vs.<br>WILLIAM JAY SIMAO AND CHERYL<br>ANN SIMAO, INDIVIDUALLY AND AS<br>HUSBAND AND WIFE,<br>Respondents. | No. 59423 |

Consolidated appeals from a district court judgment in a tort action and from post-judgment orders denying a new trial and awarding attorney fees. Eighth Judicial District Court, Clark County; Jessie Elizabeth Walsh, Judge.

*Reversed, vacated, and remanded.*

Lewis Roca Rothgerber Christie, LLP, and Daniel F. Polsenberg and Joel D. Henriod, Las Vegas; Rogers, Mastrangelo, Carvalho & Mitchell, Ltd., and Stephen H. Rogers, Las Vegas,
for Appellant.

16-08422

David T. Wall, Las Vegas; Eglet Prince and Robert T. Eglet and Robert M. Adams, Las Vegas,
for Respondents.

BEFORE HARDESTY, DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Respondents William Jay Simao and Cheryl Ann Simao (Simao) filed a motion in limine to preclude appellant Jenny Rish from presenting a low-impact defense in a personal injury case arising out of an automobile accident. Simao claimed our holding in *Hallmark v. Eldridge*, 124 Nev. 492, 500-02, 189 P.3d 646, 651-53 (2008), required the exclusion of low-impact evidence because Rish failed to retain a biomechanical expert to opine on the nature of the accident. In *Hallmark*, we held that a biomechanical engineer's testimony regarding whether the forces involved in a car accident could have caused the plaintiff's injury was without sufficient foundation to be admissible under NRS 50.275. 124 Nev. at 500-02, 189 P.3d at 651-53. Because *Hallmark* held that a biomechanical expert's testimony must have sufficient foundation to be admissible under NRS 50.275, not that a biomechanical expert's testimony must underlie all evidence of the alleged injury-causing accident, we conclude that the district court's order granting the motion in limine was in error as a matter of law.

Following eight alleged violations of the district court's pretrial order prohibiting a low-impact defense and violations of two

additional pretrial orders, the district court struck Rish's answer as a sanction. Because the case-ending sanction order failed to satisfy the requirements of *BMW v. Roth*, 127 Nev. 122, 126, 252 P.3d 649, 652 (2011), we reverse and remand this matter for a new trial.

## FACTS AND PROCEDURAL HISTORY

Rish and William Simao were involved in a car accident in which Rish rear-ended William Simao in stop-and-go traffic. The damage to the vehicles was not extensive. While an ambulance was called, both Rish and William Simao refused medical treatment at the scene. William Simao later alleged that the accident injured his head and neck, causing him constant pain and requiring on-going medical treatment and procedures. Simao brought suit against Rish to recover damages for William's injuries and Cheryl's loss of consortium.

Before trial, Simao filed a motion in limine asking the district court to preclude Rish, her attorneys, her medical expert, Dr. David Fish, and her witnesses from testifying, arguing, or insinuating that the collision was too insignificant to have caused William Simao's injuries. Citing to *Hallmark*, 124 Nev. at 496-97, 189 P.3d at 649, *Choat v. McDorman*, 86 Nev. 332, 335, 468 P.2d 354, 356 (1970), and *Levine v. Remolif*, 80 Nev. 168, 171-72, 390 P.2d 718, 719-20 (1964), Simao asserted that any argument or evidence of a low-impact accident should be barred because Rish had not retained a biomechanical engineer who could first testify that the forces imparted by the collision were too insignificant to cause the injury. On this basis, Simao also argued that photographs of the vehicles and repair invoices should likewise be excluded as irrelevant because, without supporting expert testimony, there was no reliable

correlation between the extent of damage and the extent of injury, citing *Hallmark*, NRS 50.275, and *Davis v. Maute*, 770 A.2d 36, 40 (Del. 2001).

Rish opposed the motion, arguing that physicians have always been permitted to consider the severity of the accident when formulating opinions and to opine on whether the force could have caused the injury. She further argued that none of the cases relied upon by Simao prohibit the defense from describing the accident as low impact, and that evidence of property damage was relevant, admissible, and not substantially prejudicial.

At the motion hearing, the district court found the extent of property damage to be relevant but nevertheless granted Simao's motion in its entirety because, "pursuant to the *Hallmark* case," Rish did not have "a witness who can lay the proper foundation" for Rish to advance a low-impact defense. Finding the result was required by *Hallmark*, the district court granted Simao's requests to prohibit Rish "from Raising a 'Minor' or 'Low Impact' Defense," and to prohibit Dr. Fish and other experts from "opin[ing] regarding biomechanics or the nature of the impact of the subject crash." The court further prohibited photographs of the parties' cars and property damage invoices.

Before and during the trial, Rish's trial counsel sought clarification of the district court's order in limine, voicing concerns that the order prevented the defense from offering any testimony showing the nature of the accident. The district court, stating that its order was clear, declined to clarify the order. During the trial, the court sustained eight objections by Simao to Rish's questions and evidence as violating the low-impact defense pretrial order.

During opening statements, and without objection from Simao, Rish's trial counsel described the accident by saying that Rish "was stopped behind [William Simao], who moved a few feet in front of her . . . ; [Rish] applied her brakes, only just not quite hard enough; and the accident follow[ed]." Rish's trial counsel also stated that no one in the accident claimed loss of consciousness, everyone refused help from the paramedics, and Rish drove away from the scene. Rish's trial counsel then attempted to play a portion of Rish's videotaped deposition. Simao objected. The district court's order indicated that the objection was sustained on hearsay grounds and because it contained testimony concerning "the nature of the accident."

Rish's trial counsel cross-examined three of Simao's physician experts. During cross-examination of the first doctor, Rish's trial counsel asked if he "kn[ew] anything about what happened to Jenny Rish and her passengers in this accident." Simao objected on relevancy grounds and referenced the low-impact defense pretrial order. The district court sustained the objection without comment from Rish.

Rish's trial counsel asked the second doctor if he "kn[e]w anything about the folks in Jenny Rish's car." Simao objected on relevancy grounds. A bench conference was held where Rish's trial counsel asked if the irrelevancy of his question had been addressed in a previous order. Simao briefly referenced the low-impact defense pretrial order, and the district court sustained the objection.

Finally, Rish's trial counsel asked the third doctor: "[y]ou know [William Simao] wasn't transported by ambulance?" After the doctor replied in the affirmative, Rish asked: "You know that Jenny Rish . . . was lifted from the scene." Simao objected and asked that Rish's

trial counsel be admonished for disregarding the low-impact defense pretrial order. The objection was sustained, and the jury was told to disregard the question. Simao later sought to make a record, outside the presence of the jury, as to Rish's trial counsel's violation. The district court indicated that it would consider a progressive sanction and suggested that Rish's trial counsel reread the order.

During Simao's cross-examination of Dr. Fish, Dr. Fish attempted to distinguish a case where he had causally related a patient's injury to her accident by stating, "Well, in this very significant accident, yes." Simao moved to strike most of the doctor's response, and the court instructed the jury to disregard all but the word "yes." On redirect of Dr. Fish, Rish's trial counsel asked how he reached the opinion that the accident did not cause William Simao's injuries. Dr. Fish stated that it was "based on multiple factors. It's based on the actual—looking at the images of the MRI. . . . It's looking at the notes that were taken of the events that happened and it's knowing about the accident itself." Simao objected and moved to strike, and the district court told the jury to disregard Dr. Fish's last phrase. Another exchange followed outside the presence of the jury, and Simao asked the court to give a presumption instruction to the jury as a sanction. The court ultimately instructed the jury that "there is an irrebuttable presumption that the motor vehicle accident of April 15, 2005 was sufficient to cause the type of injuries sustained by the Plaintiff. Whether it proximately caused those injuries remains a question for the jury to determine."

Finally, during cross-examination of William Simao, Rish's trial counsel asked if the traffic was stop-and-go. Simao asked for a bench conference, and the district court precluded the question because it

improperly suggested that the impact was minor. Rish's trial counsel then asked William Simao whether the paramedics had transported anyone from Rish's car. Simao objected, asked for a bench conference, and moved to strike Rish's answer. The district court granted the motion, entered a default judgment against Rish, and dismissed the jury.

Thereafter, the district court held a prove-up hearing, at which it limited each party to a short argument regarding damages and awarded William Simao $194,390.96 for past medical expenses; $1,378,209 for past pain, suffering, and loss of enjoyment of life; and $1,140,552 for future pain, suffering, and loss of enjoyment of life. It also awarded $681,286 to Cheryl Simao for loss of consortium and attorney fees in the amount of $1,078,125. In all, the awards against Rish totaled nearly $4.5 million.[1] This appeal followed.

## DISCUSSION

On appeal, Rish primarily challenges the validity of the district court's final sanction of striking her answer and entering a default judgment against her. The threshold question is whether the pretrial order precluding the testimony and evidence of a low-impact defense was erroneous as a matter of law. We hold that it was. We also hold that the district court erred by striking Rish's answer, and we reverse the district court's judgment and order a new trial.

---

[1]Because we are reversing this matter for a new trial, we do not address the procedure used by the district court to determine damages pursuant to *Foster v. Dingwall*, 126 Nev. 56, 68, 227 P.3d 1042, 1050 (2010) ("[T]he nonoffending party[ has an] obligation to present sufficient evidence to establish a prima facie case, which includes substantial evidence that the damages sought are consistent with the claims for which the nonoffending party seeks compensation.").

*The district court erred in extending Hallmark to preclude all argument of a low-impact defense*

Trial courts have broad discretion in determining whether to admit evidence and may exclude relevant evidence that is substantially more unfairly prejudicial than probative. NRS 48.035(1); *S. Pac. Transp. Co. v. Fitzgerald*, 94 Nev. 241, 243, 577 P.2d 1234, 1235 (1978). When the district court abuses its discretion in determining whether to admit or exclude evidence, this court will overturn the district court's determination. *Land Res. Dev. v. Kaiser Aetna*, 100 Nev. 29, 34, 676 P.2d 235, 238 (1984).

During the proceedings below, Simao argued that *Hallmark* precludes all testimony, evidence, argument, and insinuation of a low-impact defense unless the party offering it first provides a foundation for this defense through expert testimony from a qualified biomechanical engineer. The district court agreed and imputed the reasoning from *Hallmark* to bar any evidence of a minor or low-impact defense.

We held in *Hallmark* that the district court abused its discretion in allowing an expert witness, who was both a physician and mechanical engineer, to testify that an accident was too low impact to have caused the plaintiff's injuries. 124 Nev. at 502, 189 P.3d at 652. Although we determined that the witness was qualified to testify as an expert, we concluded that the expert did not have an adequate factual or scientific basis for his opinions regarding the nature of the accident after he acknowledged that he failed to review critical information when he formed his opinion. *Id.* at 497, 504, 189 P.3d at 649, 654. Rather, the expert's opinion was based more on supposition than science and did not qualify as admissible expert testimony under NRS 50.275 because biomechanics was not a recognized field of expertise, the testimony had

not been and could not be tested, and the expert's theories and methods had not been subjected to peer review. *Id.* at 500-02, 189 P.3d at 651-53. While noting that biomechanical testimony was not necessarily precluded in every case, we determined that the expert's testimony in that case was without a sufficient foundation to be admitted. *Id.* at 504, 189 P.3d at 654. Thus, *Hallmark* focused specifically on the admissibility of expert testimony.

Nothing in *Hallmark* mandates that supporting testimony from a certified biomechanical engineer or other expert must be offered before a defendant will be allowed to present a low-impact defense.[2] Rather, *Hallmark* stands for the well-established proposition that expert testimony, biomechanical or otherwise, must have a sufficient foundation before it may be admitted into evidence. *Id.* at 503-04, 189 P.3d at 653-54; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir.), *cert. denied* ___ U.S. ___, 135 S. Ct. 870 (2014); *Howard Entm't, Inc. v. Kudrow*, 146 Cal. Rptr. 3d 154, 170 (Ct. App. 2012). In the absence of a specific issue concerning the speed or the nature of the impact, mandating

---

[2]In arguing below that a low-impact defense requires supporting testimony from a qualified biomechanical engineer, Simao also cited to *Choat v. McDorman*, 86 Nev. 332, 335, 468 P.2d 354, 356 (1970), and *Levine v. Remolif*, 80 Nev. 168, 171-72, 390 P.2d 718, 719-20 (1964). Neither of those cases creates such a rule. Rather, in both of those cases, we held that an expert may not testify to the specific speed of the vehicles at the time of a collision absent a sufficient foundation for that determination. *Choat*, 86 Nev. at 335, 468 P.2d at 356; *Levine*, 80 Nev. at 171-72, 390 P.2d at 719-20. Moreover, as neither case addressed whether medical doctors may opine on injury causation, they are inapplicable to the issue before this court.

supporting expert testimony as a prerequisite to advancing a general low-impact defense would effectively and impermissibly deprive juries of hearing any testimony regarding the nature and circumstances of the accident and any resulting injuries unless an expert first describes the accident to the jury.[3] *See Banks v. Sunrise Hosp.*, 120 Nev. 822, 838, 102 P.3d 52, 63 (2004) (noting that it is for the jury to determine the credibility of and the weight to be given to testimony where evidence presented on a material point may be conflicting or facts could support differing inferences). Nothing in *Hallmark* mandates such a requirement, and we have previously determined that causation issues, including the circumstances and severity of an accident and whether it proximately caused the alleged injuries, are factual issues that are proper for a jury to weigh and determine. *See Nehls v. Leonard*, 97 Nev. 325, 328, 630 P.2d 258, 260 (1981) (holding that whether a collision proximately caused respondent's injuries were factual issues for the jury to resolve); *Fox v. Cusick*, 91 Nev. 218, 221, 533 P.2d 466, 468 (1975) (concluding that it is "for the jury to weigh the evidence and assess the credibility" of the witnesses); *Barreth v. Reno Bus Lines, Inc.*, 77 Nev. 196, 198, 360 P.2d 1037, 1038 (1961) (the jury decides questions of proximate cause). The district court therefore abused its discretion in prohibiting Rish from presenting or eliciting any evidence and testimony regarding the nature and circumstances of the accident, as well as the injuries suffered by Rish and her passengers. *See AA Primo Builders, LLC v. Washington*, 126 Nev.

---

[3]Generally, once a plaintiff presents testimony regarding the nature of the impact in a vehicle collision case, the defense may present evidence to rebut the plaintiff's assertions. *See Provence v. Cunningham*, 95 Nev. 4, 7-8, 588 P.2d 1020, 1021-22 (1979).

SUPREME COURT
OF
NEVADA

(O) 1947A

578, 589, 245 P.3d 1190, 1197 (2010) ("While review for abuse of discretion is ordinarily deferential, deference is not owed to legal error."); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."), *superseded by rule on other grounds*, Fed. R. Civ. P. 11.

As to whether a medical doctor may relate the nature and severity of the impact to the injuries, we note that courts in other jurisdictions have allowed such testimony. *See, e.g., Mattek v. White*, 695 So. 2d 942, 943 (Fla. Dist. Ct. App. 1997) (holding that defendant's expert in accident reconstruction and biomechanical engineering, who was not a medical doctor, was not qualified to opine on the extent of plaintiff's injury); *Santos v. Nicolos*, 879 N.Y.S.2d 701, 704 (Sup. Ct. 2009) (explaining that biomechanical engineer was not qualified to testify about the causal relationship between an accident and the injuries of the plaintiff *because he was not a medical doctor*); *Streight v. Conroy*, 566 P.2d 1198, 1200 (Or. 1977) (refusing to assign error where the trial court allowed expert medical witnesses to testify as to whether the impact could have caused plaintiff's wife's back problems after viewing photographs of the accident because the jury could review the evidence and "give such weight to the experts' testimony as they saw fit"); *Wilson v. Rivers*, 593 S.E.2d 603, 605 (S.C. 2004) (stating that medical doctor "was qualified to render an opinion on the forces created by an impact and on the general effects on the human body caused by such forces and, . . . an opinion regarding the cause of respondent's particular medical problems"); *John v. Im*, 559 S.E.2d 694, 697 (Va. 2002) ("[S]ince [the expert] was not a medical doctor, he was not qualified to state an expert medical opinion regarding

the cause of [the] injury."). And in *Hallmark*, this court suggested that had the defense expert, who was also a medical doctor, physically examined the plaintiff or reviewed her medical history, the defense may have been able to lay a proper foundation to allow the expert to testify as to causation. 124 Nev. at 504, 189 P.3d at 654.

Based on this analysis, we conclude that a medical doctor may offer an opinion regarding causation so long as there is a sufficient foundation for the conclusion. We do not intend by this opinion to suggest that low-impact collisions cannot result in serious injuries. Low-impact collisions can cause serious, as well as minor, injuries, but, as noted above, the nature of the impact is a factor for the trier of fact to consider in determining the causation of the injuries that form the basis of the claim. In this case, Dr. Fish examined William Simao's medical records, the MRI images, and photographs of the damage to the parties' vehicles, and therefore had a sufficient basis to offer an opinion on whether the accident caused William Simao's injuries.[4]

---

[4]The district court also excluded from evidence all photographs of the vehicles and invoices for the repair work on the basis that such evidence was substantially prejudicial and that *Hallmark* required supporting testimony from a biomechanical engineer in order to be admissible. During arguments, Rish withdrew any objection to the district court's ruling, and therefore, we do not decide whether the district court erred in either applying *Hallmark* to bar the admission of the photographs and invoices. However, we note that other jurisdictions generally admit such evidence because, even in the absence of supporting expert testimony, there is a common-sense correlation between the nature of the impact and the severity of the injuries, and a plaintiff may overcome any prejudicial effect by offering contradicting testimony, cross-examining the witnesses, and utilizing other mechanisms to prove his or her case. *See Johnson v. McRee*, 152 P.2d 526, 527-28 (Cal. Ct. App. 1944); *Martin v. Miqueu*, 98 P.2d 816, 818 (Cal. Ct. App. 1940); *Hayes v. Sutton*, 190 A.2d

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

*The district court erred in striking the answer*

We now turn to the validity of the sanction, which we review under a somewhat heightened standard of review. *See Foster v. Dingwall,* 126 Nev. 56, 65, 227 P.3d 1042, 1048 (2010) ("[A] somewhat heightened standard of review applies where the sanction strikes the pleadings, resulting in dismissal with prejudice."). A party is required to follow court orders, even erroneous ones, until overturned or terminated. *Walker v. City of Birmingham,* 388 U.S. 307, 320-21 (1967) (holding that order violating civil rights should have nevertheless been followed until overturned); *see also Howat v. Kansas,* 258 U.S. 181, 190 (1922) ("It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished."). Even if the order is later overruled, a sanction predicated on violations of that order may remain in force. *See Beauregard, Inc. v. Sword Services LLC,* 107 F.3d 351, 354 (5th Cir. 1997).

Here, the district court imposed a case-ending sanction by striking Rish's answer, entering a default, and conducting a prove-up hearing. Following argument on Simao's motion to strike Rish's answer, the district court entered a written order analyzing the factors in *Young v.*

---

*...continued*

655, 656 (D.C. 1963); *Cancio v. White,* 697 N.E.2d 749, 756 (Ill. App. Ct. 1998); *Mason v. Lynch,* 878 A.2d 588, 601 (Md. 2005); *Brenman v. Demello,* 921 A.2d 1110, 1118 (N.J. 2007); *Gambrell v. Zengel,* 265 A.2d 823, 824-25 (N.J. Super. Ct. App. Div. 1970); *Accetta v. Provencal,* 962 A.2d 56, 61-62 (R.I. 2009); *Murray v. Mossman,* 329 P.2d 1089, 1091 (Wash. 1958).

*Johnny Ribeiro Building, Inc.*, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990), and finding that Rish's trial counsel's conduct violated the low-impact defense pretrial order. The order concluded that counsel engaged in misconduct by violating the low-impact defense pretrial order on eight occasions during trial: one incident involved a videotaped deposition that Rish's trial counsel attempted to play during opening statements, four incidents involved questions Rish's trial counsel posed to William Simao and his experts concerning what happened to Rish and her passengers following the accident, one incident involved Rish's trial counsel asking William Simao if there was stop-and-go traffic prior to the accident, and two incidents involved Dr. Fish's answers during cross-examination and redirect.[5]

---

[5]The district court's oral order imposing case-ending sanctions was "primarily" based on Rish's trial counsel's violations of the low-impact defense pretrial order, but its written order also makes reference to three additional violations of two separate pretrial orders. The parties did not raise, and we do not analyze, the question of whether these two additional pretrial orders and their corresponding violations violate *BMW*, 127 Nev. 122, 126, 252 P.3d 649, 652 (2011). Based on our disposition, we resolve them briefly here.

First, during opening statement, Rish's trial counsel referred to an unrelated motorcycle accident involving William Simao, which was barred by a pretrial order. Second, Rish's trial counsel stated during opening statement that doctors were going to testify and that some of them appear regularly in court, and later Rish's trial counsel asked Dr. McNulty on cross-examination whether he had testified around 100 times. Simao objected to this question, and the district court sustained the objection. These violations were allegedly barred by a pretrial order excluding any attempt to present an "'attorney driven' or a 'medical-buildup' case."

Neither of these alleged medical-build up violations appear to actually fall within the pretrial order. In fact, the opening statement and
*continued on next page...*

In *BMW v. Roth*, 127 Nev. 122, 126, 252 P.3d 649, 652 (2011), we held "[f]or violation of an order in limine to constitute attorney misconduct requiring a new trial, the order must be specific, the violation must be clear, and unfair prejudice must be shown." Although the sanction requested in *BMW* differs from the sanction requested here, *BMW*'s analysis is applicable because it addresses the larger issue of attorney misconduct. *See also Foster*, 126 Nev. at 66, 227 P.3d at 1049 (discussing whether "the court's decision to strike defendants' pleadings and enter default was just, related to the claims at issue in the violated discovery order, and supported by a careful written analysis of the pertinent factors").

---

*...continued*

cross-examination question are relevant to credibility. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) ("[T]he exposure of a witness motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (internal quotation marks omitted)); *Robinson v. G.G.C., Inc.*, 107 Nev. 135, 143, 808 P.2d 522, 527 (1991) ("Expert witness testimony is, in some respects, akin to a business arrangement between the witness, the hiring attorney and the client. The trier of fact has the right to take business associations into account when determining the credibility of witnesses and the weight to give their testimony."). Additionally, they do not implicate "medical build-up." "Medical buildup" concerns a party "seek[ing] necessary but costly medical treatment, that they would otherwise forego" in order to generate a larger award. Nora Freeman Engstrom, *Sunlight and Settlement Mills*, 86 N.Y.U. L. Rev. 805, 834 (2011); *see also* Bruce A. Hagen, Karen K. Koehler & Michael D. Freeman, 2 *Litigating Minor Impact Soft Tissue Cases* § 36:12 (2015) (explaining that a motion seeking to preclude a defendant from referring to a case as a "medical buildup" or "attorney-driven" case "seeks to preclude any evidence or statement implying that medical treatment was sought as a result of litigation—or at the suggestion of Plaintiff's attorneys").

*Specificity of the order*

The low-impact defense pretrial order "preclude[d] [Rish] from Raising a 'Minor' or 'Low Impact' Defense," but it gives no further guidance except to specifically preclude Dr. Fish and other witnesses from testifying, arguing, or insinuating that the collision was too insignificant to have caused William Simao's injuries. Rish's trial counsel expressed his confusion with the order on numerous occasions, but the district court refused to clarify what it would and would not allow.

A low-impact defense is defined as "describ[ing] [an] incident as 'low impact'" in order "to liken the incident to common, everyday experiences." Roxanne Barton Conlin & Gregory S. Cusimano, *Litigating Tort Cases* § 53:22 (2014). The district court appears to broadly construe the term low-impact defense to include the facts before, during, and after the accident.

However, Rish, without objection, was permitted to describe the accident in her opening statement, stating that "she was stopped behind [William Simao], who moved a few feet in front of her . . . ; [Rish] applied her brakes, only just not quite hard enough; and the accident follow[ed]." Thereafter, Simao objected to questions concerning the nature of the accident, including questions posed by Rish's trial counsel concerning traffic conditions and what Rish did following the accident. These objections were all sustained. This inconsistent application of the low-impact defense pretrial order leads to our conclusion that the order prohibiting the low-impact defense lacks specificity.

*Clarity of the violation*[6]

Two of the violations of the low-impact defense pretrial order were statements made by Dr. Fish. Dr. Fish's implied comment that the accident was not significant was made during Simao's cross-examination, and his statement that William Simao's injuries were based, in part, on knowledge of the accident was made during redirect. Nothing in the record or the district court's order shows that Rish's trial counsel prompted or caused Dr. Fish to testify in violation of the low-impact defense pretrial order.

The other instances of attorney misconduct regard the same basic questions posed by Rish's trial counsel: whether the witness knew what happened to Rish as a result of the accident and whether there was stop-and-go traffic before the accident. While these instances might be construed to violate the low-impact defense pretrial order, none of them describe the accident itself. We conclude that there is no clear violation, let alone misconduct, of the low-impact defense pretrial order caused by these questions.

*Unfair prejudice*

Even if we were to find clear misconduct, there was no unfair prejudice to Simao. The district court found that "no lesser sanction had been successful in precluding future violations." But, the district court's order fails to explain why. Under this prong, the district court is required to find that a violation is so extreme that it cannot be eliminated through an objection and admonition. *Lioce v. Cohen*, 124 Nev. 1, 17, 174 P.3d 970,

---

[6]We note that the district court never described how the alleged instances of misconduct violated the pretrial orders.

Supreme Court
of
Nevada

(O) 1947A

981 (2008). The district court failed to meet this requirement because it did not articulate why the various admonitions and, ultimately, the irrebuttable presumption instruction were inadequate to address the alleged misconduct.

Even if an irrebuttable presumption instruction was justified, the instruction itself was confusing. The jury was first instructed that the accident in this case was sufficient to cause William Simao's injuries. However, the jury was then instructed that it was to determine whether the accident proximately caused William's injuries. But given the first part of the instruction, it is unclear how Rish could show or the jury would decide whether the accident caused William's injuries. Also, the district court did not explain the difference between causation and proximate causation, so the jury would not have been able to effectively understand or utilize the instruction. Further, regardless of its confusion, the instruction was more than sufficient to remedy any misconduct that occurred up to that point in the trial.

While it is true that two more alleged violations of the low-impact defense pretrial order occurred before the district court struck Rish's answer, the district court struck both questions posed by Rish's trial counsel and William Simao did not answer either. The district court did not explain how these two alleged violations raised the aggregate misconduct to a level warranting the ultimate case-ending sanction.

Because we conclude that any misconduct by Rish's trial counsel did not rise to the level requiring the case-ending sanctions imposed by the district court under *BMW*, 127 Nev. at 126, 252 P.3d at 652, we vacate the order striking Rish's answer.

Accordingly, for the reasons set forth above, we reverse the district court's judgment and post-judgment order denying a new trial,[7] and we remand this matter to the district court for a new trial consistent with this opinion.[8]

_____, J.
Hardesty

We concur:

_____, J.
Douglas

_____, J.
Cherry

---

[7]We decline to assign this case to a different judge because the district court's rulings do not suggest bias. *See Millen v. Eighth Judicial Dist. Court*, 122 Nev. 1245, 1254-55, 148 P.3d 694, 701 (2006) ("[D]isqualification for personal bias requires an extreme showing of bias that would permit manipulation of the court and significantly impede the judicial process and the administration of justice." (internal quotation marks and alteration omitted)).

[8]In light of this opinion, the attorney fees order is also vacated.